**OLD KENT LEASING SERVICES CORP. f/k/a/ Vanguard Financial Services Corp., Appellant,**

v.

**Deborah McEWAN, McEwan & Associates, and Overnight Accounting Plus, Appellees.**

No. 14–00–00783–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 18, 2001.

Mark C. Watler, Houston, for appellants.

Kalli L. Sturman-O'Mally, Houston, for appellees.

Panel consists of Justices YATES, FROST, and LEE.*

**CORRECTED OPINION**

FROST, Justice.

Our opinion of January 4, 2001 is withdrawn, and we issue this corrected opinion. Appellant, Old Kent Leasing Corp. f/k/a Vanguard Financial Services Corp. ("Old Kent"), brings this interlocutory, accelerated appeal from the trial court's denial of a

---

* Senior Justice Norman Lee sitting by assignment.

special appearance.[1] At issue is whether Old Kent, an Illinois resident, has established the minimum contacts necessary to establish personal jurisdiction in this forum. For the reasons discussed below, we find that Old Kent does not have the requisite minimum contacts with Texas to sustain personal jurisdiction in this state. Therefore, we reverse and remand this case with instructions for the trial court to dismiss Old Kent for lack of personal jurisdiction.

## I. FACTUAL BACKGROUND

Deborah McEwan is a certified public accountant who owns and operates the accounting firm of McEwan & Associates. Both Ms. McEwan and McEwan & Associates, appellees/plaintiffs, are residents of San Jose, California. Overnight Accounting Plus, also an appellee/plaintiff, is a California corporation whose principal place of business is also located in San Jose, California.[2]

In September 1998, Ms. McEwan began receiving information about an outsource bookkeeping system known as the "AccuLink Solution System,"[3] which was marketed by Outsource Financial, Inc. ("OFI"), a Texas corporation. Ms. McEwan sought to learn more about the AccuLink System, and in November 1998, attended a three-day symposium OFI conducted in Dallas, Texas. A few months later, McEwan & Associates entered into a lease agreement with Devon Equipment Leasing, Inc. ("Devon"),[4] a Florida corporation, for the lease of Acculink System equipment. McEwan & Associates and Devon were the only parties to the lease agreement. The lease, however, identified OFI as the supplier of the leased equipment. Under the lease agreement, Devon agreed to purchase from OFI equipment McEwan & Associates had pre-selected and then lease that equipment to McEwan & Associates. In exchange, McEwan & Associates agreed to pay Devon thirty-two monthly payments of approximately $4,000.00 each. Ms. McEwan executed a guaranty agreement, unconditionally guaranteeing the payment and performance of all McEwan & Associates' obligations under the equipment lease.

After McEwan & Associates executed the equipment lease, Ms. McEwan traveled to Sugar Land, Texas, where OFI's office is located, in order to obtain training for the Acculink System. While she was there, Ms. McEwan signed a "License Agreement" with OFI for McEwan & Associates' use of the Acculink System.

On November 26, 1998, Ms. McEwan, on behalf of McEwan & Associates, signed a delivery and acceptance receipt, certifying that the equipment McEwan & Associates had leased from Devon had been (1) delivered, (2) inspected, (3) installed, (4) was in good working condition, and (5) was ac-

---

1. A party may pursue an interlocutory appeal from the grant or denial of a special appearance. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2000).

2. It is unclear from the record what role, if any, Overnight Accounting Plus plays in this litigation or why it is bringing suit. The pleadings contain no factual recitations explaining how Overnight Accounting Plus is related to Ms. McEwan and/or McEwan & Associates or what involvement, if any, Overnight Accounting Plus had in the transactions made the subject of the suit.

3. The AccuLink Solution System encompasses the hardware, software, technical and marketing support, training and financing needed to manage accounting functions through out-

sourced bookkeeping. The plan provides for the installation of computers, laser printers, and document scanners in the offices of appellees' clients. This allows transmission of accounting information for remote processing of accounts receivable, accounts payable, payroll, and ledgers. The system also includes hardware and software upgrades, training, technical and marketing support, and the availability of customer service technicians to answer questions about the equipment and programs.

4. Appellees contend that North Star Leasing and Devon are "alter-egos" of the same company. For simplicity only, references hereinafter to Devon will pertain to both Devon and North Star.

cepted "as satisfactory." The next day, Devon assigned the equipment lease to OFC Capital Corp. ("OFC"), a Georgia corporation. About nine months after this assignment, OFC assigned the lease to Old Kent, an Illinois resident.

Meanwhile, McEwan & Associates began to experience problems with the Acculink System, and complained that: (1) some of the hardware and software promised were never delivered; and (2) the hardware and software received were "substandard" and wrought with "bugs," contrary to the representations of OFI and Devon. Despite these complaints, Old Kent insisted that McEwan & Associates make the payments owing under the equipment lease.

In April 2000, Ms. McEwan, McEwan & Associates, and Overnight Accounting Plus brought suit in Texas, alleging that Devon (the original lessor) and OFC (the first assignee), as well as the supplier (OFI) and its president, Larry A. Rice, committed fraud and engaged in false, misleading or deceptive acts in violation of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"). They also asserted claims for breach of contract, breach of warranty and civil conspiracy. At the heart of their claims are allegations that Old Kent and the two previous lessors (Devon and OFC) failed to perform under the equipment lease agreement.

Old Kent challenged the trial court's assertion of personal jurisdiction by filing a special appearance. *See* Tex.R. Civ. P. 120a(1). The trial court denied the special appearance, and ruled that Old Kent was subject to the personal jurisdiction of Texas courts. In its sole point of error, Old Kent contends that the trial court erred in finding Old Kent had the requisite minimum contacts with Texas to fairly exercise personal jurisdiction over it.

## II. STANDARD OF REVIEW

Whether a Texas court may assert personal jurisdiction over a nonresident defendant is a question of law subject to a *de novo* review. *C–Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.—Houston [14th Dist.] 1999, no pet.). On appeal from a special appearance, we review all the evidence in the record[5] to determine if the nonresident defendant met its burden of negating all possible grounds for personal jurisdiction. *Abacan Technical Servs. Ltd. v. Global Marine Int'l. Servs. Corp.*, 994 S.W.2d 839, 843 (Tex.App.—Houston [1st Dist.] 1999, no pet.) (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985)).

Often, the determination whether personal jurisdiction exists involves a resolution of underlying factual disputes. *C–Loc*, 993 S.W.2d at 476 (citing *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist.] 1997, no writ)). We review the appropriateness of that resolution for factual sufficiency. *Id.* (citing *Conner*, 944 S.W.2d at 411). In reviewing a decision for factual sufficiency, we examine all the evidence in the record. *Id.* (citing *Conner*, 944 S.W.2d at 411). We may reverse the trial court's decision for factual insufficiency where that decision is "so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust." *Cartlidge v. Hernandez*, 9 S.W.3d 341, 346 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (citing *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Runnells v. Firestone*, 746 S.W.2d 845, 849 (Tex. App.—Houston [14th Dist.] 1988), writ denied per curiam, 760 S.W.2d 240 (Tex. 1988)).

When the trial court does not file findings of fact in a special appearance, all

---

5. The trial court determines the special appearance "on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex.R. Civ. P. 120a(3).

questions of fact are presumed to support the judgment. *Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798, 802 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). Although requested by Old Kent, the trial court issued no findings of fact or conclusions of law. Therefore, we presume the trial court's resolution of fact questions supports its judgment. *See C–Loc*, 993 S.W.2d at 476–77 (citing *Billingsley Parts & Equip., Inc. v. Vose*, 881 S.W.2d 165, 168–69 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 672 (Tex.App.—Dallas 1993, writ dism'd by agr.)). Mindful of this presumption, we must affirm the trial court's judgment on any legal theory supported by the evidence. *See C–Loc*, 993 S.W.2d at 477 (citing *Temperature Sys.*, 854 S.W.2d at 673).

### III. Personal Jurisdiction

 A Texas court may assert jurisdiction over a nonresident defendant only: (1) where the Texas long-arm statute authorizes such exercise of jurisdiction; *and* (2) where such exercise is consistent with the due process guarantees embodied in both the United States and Texas Constitutions. *Cartlidge v. Hernandez*, 9 S.W.3d 341, 346 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding); Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997)). Whether a Texas court may exercise personal jurisdiction over a nonresident defendant presents a question of law. *James v. Ill. Cent. R.R. Co.*, 965 S.W.2d 594, 596 (Tex.App.—Houston [1st Dist.] 1998, no pet.).

The Texas long-arm statute authorizes jurisdiction over a nonresident defendant "doing business" in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997); *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991) (citing *Helicopteros*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). The Texas Civil Practice and Remedies Code characterizes nonresident activity as "doing business" in Texas where the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state;

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state; or

(4) performs any other acts that may constitute doing business.

Tex. Civ. Prac. & Rem.Code Ann. § 17.042.

 The long-arm statute's "doing business" requirement is broad, limited only by the requirements of federal due process guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990) (citing *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977)); *Daimler–Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 714 (Tex.App.—Austin 2000, pet. stricken). Therefore, where the exercise of personal jurisdiction comports with federal due process limitations, requirements of the Texas long-arm statute are satisfied. *Guardian*, 815 S.W.2d at 226 (citing *Helicopteros*, 466 U.S. at 413–14, 104 S.Ct. 1868).

 The federal due process clause protects, among other things, a person's liberty interest in not being subject to the binding judgments of a forum with which the nonresident has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). With respect to personal jurisdiction, federal due process mandates: (1) that the nonresident have purposefully established "minimum contacts" with the forum state; and (2) that the exercise of jurisdiction over the nonresident comport with "traditional notions of fair play and

substantial justice." *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding) (quoting *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154 quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *see Guardian,* 815 S.W.2d at 226 (citing *Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174).

▮▮▮ For issues of personal jurisdiction, a due process analysis begins by asking whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *See CSR,* 925 S.W.2d at 594. A nonresident establishes minimum contacts in Texas by purposefully availing himself of the privileges and benefits inherent in conducting business within the state. *Id.* In other words, the nonresident must purposefully invoke the benefits and protections afforded by the forum state's laws. *Reyes v. Marine Drilling Cos., Inc.,* 944 S.W.2d 401, 404 (Tex.App.—Houston [14th Dist.] 1997, no writ) (citing *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174; *Guardian,* 815 S.W.2d at 226). Requiring purposeful availment ensures that the nonresident's connections derive from *its own* purposeful conduct, and not the unilateral actions of the plaintiff or third parties. *Guardian,* 815 S.W.2d at 227–28 (citing *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Personal jurisdiction, therefore, does not emerge from the nonresident's random, fortuitous, or attenuated contacts with the forum, or from another's acts. *Id.* at 226 (citing *Burger King,* 471 U.S. at 465, 105 S.Ct. 2174; *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868; *World–Wide,* 444 U.S. at 298, 100 S.Ct. 559). Rather, the nonresident must itself take some action or engage in some conduct creating its own "substantial connection" with the forum

state. *Id.* (citing *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174). If the court concludes that minimum contacts with the forum state exist, the court then proceeds to evaluate those contacts in light of five factors[6] to determine if the assertion of jurisdiction comports with traditional notions of fair play and substantial justice. *Antonio v. Marino,* 910 S.W.2d 624, 627 (Tex. App.—Houston [14th Dist.] 1995, no writ) (citing *Guardian,* 815 S.W.2d at 228).

▮▮▮ A defendant's minimum contacts with the forum state can produce either general or specific jurisdiction. *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996) (orig.proceeding). General jurisdiction arises when a nonresident defendant's contacts are "continuous and systematic." *Id.* Therefore, general jurisdiction allows the forum state to exercise personal jurisdiction over the nonresident defendant, even if the cause of action did not arise from or relate to the nonresident's contacts with the state. *Id.* Specific jurisdiction emerges where the alleged liability "arises from or is related to" the nonresident's activity or contacts within the forum state. *Id.* A single contact with Texas, of substantial quality and nature, may be sufficient to establish specific jurisdiction when the cause of action arises from that contact. *Mem'l Hosp. System v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ). Here, appellees concede that Old Kent's contacts with Texas do not give rise to general jurisdiction. Therefore, we turn our attention to the specific jurisdiction analysis.

▮▮▮ Specific jurisdiction exists where the injury to the plaintiff arises out of the minimum contacts with the forum state. *Guardian,* 815 S.W.2d at 230. Spe-

---

6. The five factors are: (1) the nonresident's burden; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining an efficient resolution of disputes; and (5) the States' common interest in furthering fundamental, substantive social policies. *Antonio v. Marino,* 910 S.W.2d 624, 627 (Tex.App.—Houston [14th Dist.] 1995, no writ).

cific jurisdiction may arise without the nonresident defendant setting foot upon the forum state's soil or may arise from the commission of a single act directed at the forum. *See Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174. Although not a separate component, foreseeability is an important consideration in determining whether a nonresident's ties to a forum create a "substantial connection." *C–Loc Retention Sys., Inc. v. Hendrix,* 993 S.W.2d 473, 477–78 (Tex.App.—Houston [14th Dist.] 1999, no pet.). The nonresident must reasonably anticipate being haled into a Texas court to answer for its injurious actions. *Cartlidge v. Hernandez,* 9 S.W.3d 341, 348 (Tex.App.—Houston [14th Dist.] 1999, no pet.). In conducting a specific jurisdiction analysis, we focus on the relationship among the defendant, the state of Texas, and the litigation. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990) (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). We consider whether appellees'/plaintiffs' claims arose from or relate to the contacts, if any, Old Kent had with Texas and whether such contacts were directed at Texas. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 227–28 (Tex.1991).

### Old Kent's Contacts with Texas

Appellees contend the Texas long-arm statute permits jurisdiction over Old Kent because: (1) when Old Kent accepted assignment of the lease, it became obligated to perform from Texas, i.e., to provide Texas-based equipment and services; and (2) Old Kent contracted with the supplier, a Texas resident. Specifically, appellees argue that Old Kent meets the "doing business in Texas" requirement because: (1) the lease Devon assigned to Old Kent promises the delivery of Texas goods, services, and warranties; (2) when Old Kent became the assignee of the lease, it became obligated to provide those Texas goods and services; and (3) the lease, and therefore Old Kent, are inextricably intertwined in the "Texas business transaction."

 Because appellees pled sufficient allegations to bring Old Kent within reach of the Texas long-arm statute, we review the record to determine whether Old Kent has negated all bases of personal jurisdiction.[7] *See M.G.M. Grand Hotel, Inc. v. Castro,* 8 S.W.3d 403, 408 n. 2 (Tex.App.—Corpus Christi 1999, no pet.); *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995) (orig.proceeding). For the reasons explained below, we find Old Kent met its burden and established that it is not subject to the jurisdiction of Texas courts.

At the outset, we note that we find no support in the record for appellees' contention that the equipment lease requires Old Kent to provide Texas-based goods and services. No provision of the lease requires anything to be provided specifically from the state of Texas. While the address of the supplier of the AccuLink System equipment (OFI) is in Texas, the lease does not require the equipment to be made in Texas or shipped from Texas. Appellees point to nothing in the lease, other than supplier's Texas location, to support such an interpretation. The mere fact that the supplier (OFI) has a Texas address does not mean the contract called for any goods to be produced in or shipped from Texas.

Similarly, despite appellees' contentions, the equipment lease does not provide that the servicing of, or training for, the AccuLink System must be provided in or from Texas. While the lease schedule makes

---

7. "Without jurisdictional allegations by the plaintiff that the defendant has committed any act in Texas, the defendant can meet its burden of negating all potential bases of jurisdiction by presenting evidence that it is a nonresident." *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 634 (Tex.App.—Dallas 1993, writ denied) (citing *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex.1982); *Steve Tyrell Productions, Inc. v. Ray,* 674 S.W.2d 430, 436 (Tex.App.—Austin 1984, no writ)).

reference to "on site training" for the software, the "on site" location of the lessee (McEwan & Associates) is not in Texas; rather, its place of business, where any "on site" training would necessarily occur, is in California. Although the schedule also makes reference to an "off site" training program, it does not indicate where the "off site" training was to occur, nor does the lease otherwise require "off site" training in Texas. Therefore, a plain reading of the lease does not support the notion that the equipment financed under the lease, or services to which the lease schedule refers, are necessarily "Texas-based."

Even if the lease required the equipment or services to have come from Texas, nothing in the lease indicates that it was the duty of the lessor (Devon) or subsequent assignees (including Old Kent) to *supply* any equipment or services related to the Acculink System. Under the equipment lease, the lessor is obligated to provide the *financing* for purchase of the equipment; it is not obligated to *supply* the equipment or services.[8] Indeed, the terms of the lease provide that it is *solely* the responsibility of the supplier (OFI), and not the lessor or a subsequent assignee to whom the lessee (McEwan & Associates) is to look for the provision of both services and equipment. Specifically, the lease provides:

> Lessee [McEwan & Associates] agrees that if Lease Payments include the cost of Equipment maintenance and/or service from a third party provider ("Provider"), *Lessor shall not be required to*

*perform any of the Provider's obligations with respect to the provision of such maintenance and/or service and Lessee will look solely to Provider for performance of such obligations* and Lessee's obligation to make Lease Payments shall remain unconditional.[9]

Thus, appellees' argument that the lessor (Devon) and a subsequent assignee (Old Kent) had a duty to *supply* goods and services, from Texas or otherwise, is belied by the express terms of the lease.

Nevertheless, McEwan & Associates alleges that Old Kent became contractually obligated to provide all of the goods and services described in the equipment lease when it took the assignment of the equipment lease.[10] The lease provides that the lessor's only obligation to McEwan & Associates was to purchase pre-selected equipment from the supplier and to lease that equipment to McEwan & Associates. At the time OFC assigned the lease to Old Kent, this obligation had been satisfied in that the original lessor (Devon) had provided, and McEwan & Associates had accepted, the equipment as satisfactory. The supplier's agreement to provide services to McEwan & Associates is independent of the lessor's duty to purchase and finance the equipment. The lease itself makes this arrangement abundantly clear. Furthermore, under the express terms of the parties' agreement, any defects in the equipment or deficiencies in services were the responsibility of the supplier (OFI), not the lessor or its assignee. Consequently, at the time Old Kent entered the

---

**8.** Appellees point to the schedule's reference to equipment installation and training as creating a "continuous" duty for the lessor to provide these items. In making this argument, appellees rely on the following lease provision:

> In the event of a conflict between the language of this Lease and any Schedule, the language of such Schedule shall prevail with respect to the transaction governed by such Schedule.

To the extent the language of the schedule is inconsistent with the remainder of the lease, the schedule prevails. However, the schedule

expressly provides that the actual *terms* of the schedule are "subject to all conditions and provisions set forth" in the lease.

**9.** Emphasis added.

**10.** Appellees' petition states:

> [P]art of plaintiffs' causes of action against Old Kent Leasing arises from and relates to Old Kent Leasing's contacts with Texas, *by its acceptance of the role of Lessor* to the Lease that requires it to provide to plaintiffs Texas goods and services; and by its failure to provide these goods and services.

picture, its only role was to accept the lease payments from McEwan & Associates, whose obligation to make lease payments was "unconditional."

Even if the lessor's duties had not been fulfilled at the time OFC assigned the lease to Old Kent, the lease clearly contemplated future assignments and specifically provided that assignees would have "none of Lessor's obligations (unless such obligations are expressly assumed in writing by such new owner)." The relevant lease provision states:

> LESSOR MAY, WITHOUT NOTICE, SELL, TRANSFER, ASSIGN OR ASSIGN AS COLLATERAL ITS INTEREST IN THIS LEASE, THE EQUIPMENT, OR ANY LEASE PAYMENTS OR OTHER SUMS DUE HEREUNDER. If Lessor makes any such assignment or transfer, *the new owner will have all of Lessor's rights and benefits but none of Lessor's obligations (unless such obligations are expressly assumed in writing by such new owner).* The rights of the new owner will not be subject to any claims, defenses, or set-offs that Lessee may have against Lessor.

Nothing in the record suggests Old Kent assumed any responsibilities, much less greater responsibilities than those of its assignor, OFC. *See Capitan Enters., Inc. v. Jackson,* 903 S.W.2d 772, 775 (Tex. App.—El Paso 1994, writ denied) ("Generally, a party assuming contractual liability is liable to the same extent as the party from whom it assumed the contract.") (citing *Schultz v. Weaver,* 780 S.W.2d 323, 325 (Tex.App.—Austin 1989, no writ)). Thus, we can only conclude that Old Kent had no obligation to provide equipment or services to appellees, in Texas or otherwise.

Finally, appellees argue the equipment lease and, therefore, Old Kent, as assignee, are "inextricably intertwined" with the "Texas business transaction." McEwan & Associates contends that the lease was a "necessary part of the business transaction" put together by the Texas supplier

(OFI). While there is some connection between the forum and the business transaction at issue here, that link is insufficient to subject Old Kent to the jurisdiction of Texas courts. Courts in this state have long rejected the notion that *any* link to Texas in a business transaction is sufficient to subject its participants to the jurisdiction of Texas courts. *See, e.g., Tele-Ventures, Inc. v. International Game Tech.,* 12 S.W.3d 900, 908–09 (Tex .App—Austin 2000, pet. denied) (finding that merely contracting with a Texas corporation does not satisfy the minimum-contacts requirement); *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.,* 994 S.W.2d 684, 691–92 (Tex.App.—San Antonio 1998, no pet.) (stating that neither contracting with a Texas corporation nor the partial performance of a contract in Texas is sufficient to establish personal jurisdiction).

The transaction at issue here involved a California finance lessee (McEwan & Associates), a Florida finance lessor (Devon), and a Texas supplier (OFI). The lease makes reference to the Texas supplier as the provider of the Acculink System and as the one to whom the lessee (McEwan & Associates) must look for receipt and performance of the system. Old Kent is an Illinois resident and the second assignee of this equipment lease, with no obligation to do anything except receive the benefits assigned to it. Moreover, it was McEwan & Associates, not Old Kent, who executed a licensing agreement with the Texas supplier. The only parties to the equipment lease were McEwan & Associates, as lessee, and Devon, as lessor. The Texas supplier did not sign the equipment lease and was not a party to that agreement. Even if the supplier (OFI) had been a party to the lease agreement, that fact, alone, would not provide a basis for jurisdiction. *See Magnolia,* 994 S.W.2d at 691 ("[M]erely contracting with a Texas corporation does not satisfy the minimum contacts requirement."). Similarly, partial performance of a contract in Texas is "not the *sine qua non* of personal

jurisdiction." *Id.* at 692; *U-Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762–63 (Tex.1977) (finding no personal jurisdiction even though plaintiffs' cause of action was connected with contractual obligations that were partially performable in Texas). Thus, even if the original lessor had contracted with the Texas supplier, those contacts could not be attributed to Old Kent nor would they be sufficient, standing alone, to confer jurisdiction.

In short, the Texas supplier made no assignment to Old Kent and Old Kent took nothing by assignment from the Texas supplier. Appellees may not attribute to Old Kent their own, or the original lessor's connections with Texas, in order to make the requisite showing under the Texas long-arm statute. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 227–28 (Tex.1991) (citing *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (holding that a court will not attribute the conduct of another to a nonresident in order to establish personal jurisdiction)). Whatever contacts the original lessor (Devon), its first assignee (OFC), and the supplier (OFI) might have had in, or with, the state of Texas, those contacts do not operate to create "minimum contacts" between Old Kent and this jurisdiction.

The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant which create a substantial connection with the forum state. *Guardian,* 815 S.W.2d at 226. The substantial connection between the nonresident defendant and the forum state, necessary for a finding of minimum contacts, must derive from action or conduct *of the nonresident,* purposefully directed toward the forum

state. *Id.* This requirement that a defendant purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person. *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Garner v. Furmanite Australia Pty, Ltd.,* 966 S.W.2d 798, 803 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). There is nothing in this record to suggest that Old Kent availed itself of the privilege of conducting business in Texas or that it could have reasonably anticipated being haled into a Texas court based on its acceptance of the assignment of the equipment lease.

Although it is apparent from the record that appellees and others with whom they transacted business conducted various activities in Texas, there is no conduct by Old Kent in Texas, and no purposeful actions on Old Kent's part to constitute minimum contacts in this forum. We hold that Old Kent did not conduct purposeful activities in Texas in its dealings with appellees.[11] We further hold that Old Kent negated all possible grounds upon which the court's personal jurisdiction was based. Accordingly, we find the trial court erred in overruling Old Kent's special appearance.

### III. CONCLUSION

We sustain Old Kent's single issue presented for our review, reverse the order denying Old Kent's special appearance, and remand this case with instructions to dismiss the claims against Old Kent for lack of personal jurisdiction.

---

11. Having determined that Old Kent had insufficient minimum contacts with Texas to be subject to the jurisdiction of the lower court, we do not reach the "fair play and substantial justice" component of the due process analysis. *See Guardian,* 815 S.W.2d at 231; *Tele-Ventures, Inc. v. International Game Tech.,* 12 S.W.3d 900, 912 n. 13 (Tex.App.—Austin 2000, pet. denied).