## C–LOC RETENTION SYSTEMS, INC., Appellant,

v.

## Al HENDRIX, Appellee.

No. 14–98–00449–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 27, 1999.

---

Fred A. Simpson, Houston, for appellants.

David B. Dickinson, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and FROST.

**OPINION**

YATES, Justice.

Appellant, C–Loc Retention Systems, Inc., by this interlocutory appeal, complains of the trial court's denial of its special appearance under Rule 120a of the Texas Rules of Civil Procedure. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp.1998). The issue presented on appeal is whether the trial court erred in denying C–Loc's special appearance. We reverse the order of the trial court and dismiss the case against C–Loc.

## I. Background

On September 7, 1994, appellee, Al Hendrix, a resident of Galveston, Texas, entered into an agreement to purchase "bulkheading materials" from C–Loc, a Michigan corporation. Hendrix paid C–Loc $3,997.55 for the materials. At the time Hendrix purchased the C–Loc materials, he and C–Loc traded several phone calls and faxes. After Hendrix installed the C–Loc bulkheading materials on his property, he began to have problems with the materials. Hendrix informed C–Loc of his problems. In an attempt to resolve

Hendrix's problems, Lawrence Berger, president and CEO of C–Loc, sent Gary Genta from Michigan to see Hendrix in Galveston.

After being unable to resolve the matter, Hendrix filed suit alleging that C–Loc had violated the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (7), and (23) (Vernon Supp.1998), and the "Action Fraud Statute," TEX. BUS. & COM CODE ANN. § 27.01 (Vernon 1987), and had breached the sales contract. C–Loc filed a special appearance challenging the trial court's personal jurisdiction over it. In support of its special appearance, C–Loc provided the affidavit of Berger, in which he states C–Loc is a Michigan corporation, which has never (1) advertised in any publication directed to Texas, (2) committed a tort in whole or in part in Texas, (3) recruited Texas residents for employment, (4) held a bank account in Texas, (5) paid taxes in Texas, (6) owned any real or personal property in Texas, or (7) made use of any Texas court. Berger further states, after reviewing C–Loc's records for the previous three years, he has found that no C–Loc representatives have entered Texas for business purposes.

Hendrix claims, Genta, who came to see him in Galveston, is a representative of C–Loc. At his deposition, Hendrix testified that Berger represented to him that he would send a C–Loc representative or agent to address his complaints. C–Loc, on the other hand, contends Genta is not one of its representatives. In a supplemental affidavit, Berger attests that he asked Genta, a C–Loc customer who has never been on C–Loc's payroll, to act as a consultant to him in his capacity as president and CEO of C–Loc. Berger states he asked Genta, who had experience in installing C–Loc products for his own customers in Michigan, to travel to Galveston in his place because he was recovering from surgery. Berger asked Genta to report back to him on what he observed with regard to Hendrix's problem, but instruct-ed Genta not to advise Hendrix about the installation of the C–Loc material. The trial court denied C–Loc's special appearance.

## II. Standard of Review

■ The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *See Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 633 (Tex.App.— Dallas 1993, writ denied). At the special appearance hearing, the nonresident defendant bears the burden of negating all bases of personal jurisdiction. *See National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772 (Tex.1995). If the plaintiff does not plead jurisdictional allegations, *i.e.*, that the defendant has committed any act in Texas, the defendant can satisfy its burden by presenting evidence that it is a nonresident. *See Hotel Partners*, 847 S.W.2d at 634.

■ Whether the court has personal jurisdiction over a nonresident defendant is a question of law, but the proper exercise of such jurisdiction is sometimes preceded by the resolution of underlying factual disputes. *See Conner v. Conti-Carriers & Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist.] 1997, no writ). The standard of review for determining the appropriateness of the resolution of those facts is the factual sufficiency of the evidence review. *See id.* (citing *Hotel Partners*, 847 S.W.2d at 632). The reviewing court considers all the evidence in the record. *See id.* If the special appearance is based upon undisputed and established facts, the reviewing court shall conduct a *de novo* review of the trial court's order either granting or denying a special appearance. *See id.*

■ Although requested by the parties, the trial court made no findings of fact and conclusions of law. All questions of fact, therefore, are presumed to be

found in support of the judgment. *See Billingsley Parts & Equip., Inc. v. Vose,* 881 S.W.2d 165, 168–69 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Temperature Sys., Inc. v. Bill Pepper, Inc.,* 854 S.W.2d 669, 672 (Tex.App.—Dallas 1993, writ ·dism'd by agr.). Furthermore, this court must affirm the judgment of the trial court on any legal theory finding support in the evidence. *See Temperature Sys., Inc.,* 854 S.W.2d at 673.

## III. Texas Long–Arm Statute

A Texas court may exercise jurisdiction over a nonresident if two conditions are satisfied. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990).

■ The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). While the statute enumerates several specifics acts constituting "doing business," it also includes any "other acts that may constitute doing business." *See Schlobohm,* 784 S.W.2d at 357.[1] The "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *See Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Therefore, we need only consider whether the assertion of personal jurisdiction over C–Loc is consistent with the requirements of due process. *See id.; Reyes v. Marine Drilling*

*Cos.,* 944 S.W.2d 401, 404 (Tex.App.—Houston [14th Dist.] 1997, no writ).

## IV. Due Process

■ Due process consists of two components: (1) whether the nonresident defendant has purposefully established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *See Guardian Royal Exchange,* 815 S.W.2d at 226 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ Under the minimum contacts analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws. *See Reyes,* 944 S.W.2d at 404 (citing *Burger King Corp.,* 471 U.S. at 474–75, 105 S.Ct. 2174). A nonresident defendant who has purposefully availed itself of the privileges and benefits of conducting business in the forum state has sufficient contacts with the forum to confer personal jurisdiction on the court. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). The purposeful availment requirement insures that the nonresident defendant's contact must result from its purposeful contact, not the unilateral activity of the plaintiff or a third party. *See Guardian Royal Exchange,* 815 S.W.2d at 227.

■ In determining whether a nonresident defendant has purposefully established minimum contacts with the forum state, "foreseeability" is a ·significant consideration. Although not an independent

---

1. The Texas long-arm statute states:

   In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

   (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

   (2) *commits a tort in whole or in part in this state;* or

   (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

   TEX. CIV. PRAC. & REM. CODE ANN. § 17.042

component of the minimum contacts analysis, foreseeability is implicit in determining whether there is a "substantial connection" between the defendant and the forum state. If a nonresident, by its actions or conduct, has purposefully availed itself of the state's benefits and the protections of its laws, then it has established a substantial connection with the state and subjected itself to the state's jurisdiction. *See Conner*, 944 S.W.2d at 410 (citing *Guardian Royal Exchange*, 815 S.W.2d at 226–27).

■■■■ The nonresident defendant's contacts can give rise to two types of jurisdiction. The first is specific jurisdiction, which is established when the plaintiff's cause of action arises out of, or relates to the defendant's contacts with the forum state. *See id.* The defendant's activities must have been purposefully directed toward the forum state. *See Guardian Royal Exchange*, 815 S.W.2d at 228. Under specific jurisdiction, the minimum contact analysis, focuses on the relationship among the defendant, the forum, and the litigation. *See id.*

■■■■ The second type of jurisdiction is general jurisdiction, which is established by the defendant's continuous and systematic contacts with the forum. Such contacts permit the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from, or relate to the defendant's activities conducted within the forum state. *See CSR Ltd.*, 925 S.W.2d at 595. Under general jurisdiction, the minimum contacts analysis is more demanding, requiring a showing of substantial activities within the forum state. *See Schlobohm*, 784 S.W.2d at 357.

Hendrix argues the trial court's jurisdiction over C–Loc is based on specific jurisdiction, not general jurisdiction. Therefore, we shall analyze C–Loc's contacts with Texas to determine whether the corporation is subject to the trial court's specific jurisdiction.

■■■■ C–Loc contends it did not perform any act in Texas in connection with the sale of its product to Hendrix. Specifically, C–Loc argues that when it delivered its product to the common carrier and Hendrix paid the cost of shipping, C–Loc completed its performance of the contract in Michigan; therefore, it performed no part of the contract in Texas. *See* TEX. BUS. & COM CODE ANN. § 2.401(b)(1) (Vernon 1994).[2] We do not believe the fact that the C–Loc materials were shipped free on board point of origin to be the sole determining factor. Instead, we shall also look to other facts surrounding the sale of the C–Loc materials.

The Forth Worth court of appeals considered facts similar to those in this case. *See C.W. Brown Mach. Shop, Inc. v. Stanley Mach. Corp.*, 670 S.W.2d 791 (Tex. App.—Fort Worth 1984, no writ). Stanley Machinery, a Massachusetts corporation, placed an advertisement in a nationally circulated publication for the sale of used machines. *See id.* at 792. After seeing the advertisement, C.W. Brown, a Texas corporation, contacted Stanely Machinery regarding the purchase of one of its machines. *See id.* Stanley Machinery shipped the machine "FOB Massachusetts." *See id.* at 793. C.W. Brown wired the payment to Massachusetts. *See id.* at 792. When C.W. Brown received the machine in Texas, it discovered problems with it and had to have it repaired. *See id.*

---

**2.** Section 2.401(b)(1) of the Business and Commerce Code states:

(b) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of

title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading
(1) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; ...

The *Stanley* court found under those facts that Stanley Machinery was not doing business in Texas, had not consummated the complained-of transaction in Texas, and that the cause of action did not arise from some act or transaction in Texas. *See id.* at 793–94;[3] *see also Hayes v. Wissel*, 882 S.W.2d 97 (Tex.App.—Fort Worth 1994, no writ) (relying on *C.W. Brown* in affirmance of special appearance).

■■■■ C–Loc's entering into a sales agreement with Hendrix in itself does not establish purposeful availment. *See Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. 2174; *Temperature Sys., Inc.*, 854 S.W.2d at 675. Nor is the shipment of the materials from Michigan to Texas sufficient to justify an exercise of personal jurisdiction. *See Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985) (citing *Loumar v. Smith*, 698 F.2d 759 (5th Cir.1983) (holding nonresident partnership not subject to personal jurisdiction of Texas court although it sold and shipped to Texas plaintiff goods that were subject of breach of contract claim)).

■■■ Moreover, like the plaintiff in *C.W. Brown*, Hendrix initiated contact with a Michigan corporation having no other contact with Texas. There is no evidence that C–Loc advertised or directed its product to Texas. Furthermore, we do not find Genta's one trip to Texas on behalf of C–Loc, whether as an agent of the company as Hendrix asserts or as customer of the company as C–Loc asserts, to be more than an isolated occurrence in relation to Hendrix's complaint regarding an isolated sale to a resident of Texas.[4] Single or occasional acts are not sufficient to establish jurisdiction if the nature and quality of such acts and the circumstances of their commission "create only an 'attenuated' affiliation with the forum." *CMMC v. Salinas*, 929 S.W.2d 435, 439 (Tex.1996) (quoting *Burger King Corp.*, 471 U.S. at 475 n. 18, 105 S.Ct. 2174).

We cannot conclude that the "random use of interstate commerce" to negotiate the sales agreement and "the isolated shipment of goods" to Texas at the instigation of Hendrix establish the requisite minimum contacts for the exercise of jurisdiction over C–Loc. *See Stuart*, 772 F.2d at 1194.[5] Therefore, we find the trial court erred in denying C–Loc's special appearance. Accordingly, the order of the trial court is reversed and the case against C–Loc is dismissed.

---

3. Although an issue in the case involved whether Stanley Machinery's advertisement established sufficient contacts with Texas—an issue not present in the case before this court—the court looked at all the circumstances surrounding the sale to C.W. Brown.

4. C–Loc also argues Hendrix offered no competent evidence in support of jurisdiction. C–Loc points out that Hendrix, although attaching exhibits to his response to C–Loc's special appearance, failed to include an affidavit authenticating such documents. In light of our disposition, we need not address this issue.

5. Because we do not find sufficient minimum contacts, we do not reach the fair play and substantial justice analysis.