**MTIS LIMITED, Appellant,**

v.

**CORPORACION INTERAMERICANA DE ENTRETENEMIENTO S.A. DE C.V., Operadora de Centros de Espectaculos S.A. de C.V., OCESA Presenta, S.A. de C.V., OCESA Presents, Inc., and Rock and Pop International, Ltd., Appellees.**

No. 14–99–01332–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 28, 2001.

Publication Ordered Oct. 31, 2001.

Patrick J. Dyer, Houston, for Appellant.

Thomas D. Cordell, Kent Rutter, Houston, for Appellees.

Panel consists of Justices ANDERSON, WITTIG, and SEYMORE.

## OPINION

WITTIG, Justice.

This is an appeal from a special appearance asserted by appellees in response to breach of contract and fraud claims by appellant. The court sustained the special appearance. The parties' dispute centers on the operating rights to a theater in Mexico. The primary questions we address are (1) whether a contract concerning the theater was formed which supported jurisdiction in Texas, and (2) whether appellees made misrepresentations purposefully directed at Texas. We affirm.

## Background

Appellant, MTIS,[1] is a British corporation whose sole shareholder is William York, a Texas lawyer. Appellees are three Mexican corporations with offices in Mexico City, a Delaware corporation with offices in New York, and a Bahamian corporation.[2]

At the heart of the parties' dispute is a purported contract concerning the operating rights to Teatro Orfeon, a stage theater located in Mexico City, Mexico. The theater was owned in part by Manuel Reyero, a Mexican national. Prior to 1996, SEPSA, a Mexican company owned by Reyero, held operating rights to the theater.[3] In 1996, SEPSA entered into an agreement with appellee OCESA for the latter to manage, operate, and receive revenues from the theater in partial exchange for advancing funds to renovate the theater. In this contract, the parties were governed by Mexican law and Mexican courts had exclusive jurisdiction over any disputes. The agreement was to expire in July 1998. According to the affidavit of one of the appellees' officers, the agreement was verbally extended in December 1996 to 2003. The existence and validity of the agreement is disputed by MTIS.

In March 1998, appellees and SEPSA began discussions, in Mexico, regarding the future operation of the theater. Appellees took the position that, while they had exclusive rights to the theater until 2003, they would listen to any proposals by SEPSA. SEPSA was represented in the negotiations by Reyero and York. Reyero introduced York as SEPSA's lawyer. No party ever referred to York as a principal or as anything other than retained counsel. Likewise, York always referred to SEPSA or MTIS as "my client." York generally participated in the discussions by phone from Houston, while all the other participants were in Mexico.

On April 1, 1998, York sent a draft operating agreement to appellee, CIE, which owns OCESA. For the first time, appellant MTIS was referenced as a party to the proposed transaction. The proposed agreement specified that Texas law would govern, however, no terms of the agreement were specified to be performed in Texas. No one informed appellees that York was a principal in MTIS.

Negotiations continued. A number of letters and proposed draft agreements were exchanged between the parties. Each draft contained Texas choice of law and forum provisions. MTIS was identified in later documents as an English company. On May 22, York sent a partial redraft of the latest proposed operating agreement. On May 26, OCESA responded to York, in relevant part:

> Attached, please find, for your review and comments, changes to the letter agreement. The document is marked to show changes made to the copy sent by you.
>
> Attached please also find, for your review and comments, a set of amended pages of the Operating Agreement.
>
> We believe that with said changes, the letter and Operating Agreement (with minor changes to be provided) are basicly [sic] in final form.

The written agreement, however, was never consummated. Claiming that the May

---

1. "Music Theater in Spanish."

2. The appellees' relationships are complex and confusing. Because of our disposition of this appeal, we need not outline them in detail. For clarity, we sometimes refer to appellees collectively as "OCESA" or "appellees" unless otherwise necessary to distinguish them.

3. SEPSA is not a party to this appeal.

26 comments constituted acceptance of the agreement, MTIS filed suit for breach of contract. It also sued appellees for fraud because appellees allegedly admitted that, despite undertaking extensive negotiations with MTIS, they really never intended to enter into an agreement with MTIS. Appellees asserted a special appearance, which the trial court sustained. MTIS now brings this appeal.

## Standard of Review

■ Whether a Texas court may assert personal jurisdiction over a nonresident defendant is a question of law subject to a *de novo* review. *C–Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.—Houston [14th Dist.] 1999, no pet.). On appeal from a special appearance, we review all the evidence in the record to determine if the nonresident defendant met its burden of negating all possible grounds for personal jurisdiction. *Abacan Technical Servs. Ltd. v. Global Marine Int'l. Servs. Corp.*, 994 S.W.2d 839, 843 (Tex.App.—Houston [1st Dist.] 1999, no pet.) (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985)).

■ Often, the determination whether personal jurisdiction exists involves a resolution of underlying factual disputes. *C–Loc*, 993 S.W.2d at 476. We review the appropriateness of that resolution for factual sufficiency. *Id.* In this review, we examine all the evidence in the record. *Id.* We may reverse the trial court's decision where that decision is "so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust." *Cartlidge v. Hernandez*, 9 S.W.3d 341, 346 (Tex.App.—Houston [14th Dist.] 1999, no pet.).

## Personal Jurisdiction

A Texas court may assert jurisdiction over a nonresident defendant only: (1) where the Texas long-arm statute authorizes such exercise of jurisdiction; and (2) where such exercise is consistent with the due process guarantees embodied in both the United States and Texas Constitutions. *Id.;* TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The Texas long-arm statute authorizes jurisdiction over a nonresident defendant "doing business" in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042; *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). The long-arm statute characterizes nonresident activity as "doing business" in Texas where the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state;

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state; or

(4) performs any other acts that may constitute doing business.

TEX.CIV.PRAC. & REM.CODE ANN. § 17.042.

■ The long-arm statute's "doing business" requirement is broad, limited only by the requirements of federal due process guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). Therefore, where the exercise of personal jurisdiction comports with federal due process limitations, requirements of the Texas long-arm statute are satisfied. *Guardian Royal*, 815 S.W.2d at 226.

■ Federal due process mandates: (1) that the nonresident have purposefully established "minimum contacts" with the forum state; and (2) that the exercise of jurisdiction over the nonresident comport

with "traditional notions of fair play and substantial justice." *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996) (orig. proceeding). A nonresident establishes minimum contacts in Texas by purposefully availing himself of the privileges and benefits inherent in conducting business within the state. *Id.* In other words, the nonresident must purposefully invoke the benefits and protections afforded by the forum state's laws. *Reyes v. Marine Drilling Cos., Inc.*, 944 S.W.2d 401, 404 (Tex.App.—Houston [14th Dist.] 1997, no writ) (citing *Guardian Royal*, 815 S.W.2d at 226). Requiring purposeful availment ensures that the nonresident's connections derive from its own purposeful conduct, and not the unilateral actions of the plaintiff or third parties. *Guardian Royal*, 815 S.W.2d at 227–28. Personal jurisdiction, therefore, does not emerge from the nonresident's random, fortuitous, or attenuated contacts with the forum, or from another's acts. *Id.* at 226. Rather, the nonresident must itself take some action or engage in some conduct creating its own "substantial connection" with the forum state. *Id.*

■ A defendant's minimum contacts with the forum state can produce either general or specific jurisdiction. *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996) (orig. proceeding).

### Specific Jurisdiction Analysis

■ Specific jurisdiction emerges where the alleged liability "arises from or is related to" the nonresident's activity or contacts within the forum state. *Id.* Although not a separate component, foreseeability is an important consideration in determining whether a nonresident's ties to a forum create a "substantial connection."

*C–Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 477–78 (Tex.App.—Houston [14th Dist.] 1999, no pet.). The nonresident must reasonably anticipate being haled into a Texas court to answer for its injurious actions. *Cartlidge v. Hernandez*, 9 S.W.3d 341, 348 (Tex.App.—Houston [14th Dist.] 1999, no pet.). In a specific jurisdiction analysis, we focus on the relationship among the defendant, the state of Texas, and the litigation. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). We consider whether MTIS's claims arose from or relate to the contacts, if any, appellees had with Texas and whether such contacts were directed at Texas. *See Guardian Royal*, 815 S.W.2d at 227–28.

■ Though not entirely clear in its brief, it appears MTIS argues that appellees subjected themselves to the specific jurisdiction of Texas courts in three ways: (1) appellees negotiated and entered into a contract which included Texas forum and choice of law clauses, (2) appellees negotiated with a Texas resident to such an extent it was "doing business" in Texas, and (3) appellees intentionally made misrepresentations in Texas by "repeatedly representing their intent to enter into an agreement." We disagree with these contentions.

First, there was sufficient evidence supporting the trial court's finding that there was no meeting of the minds on an operating agreement. Contrary to MTIS's claim, OCESA's May 26 comments do not establish that a contract was formed. If anything, the letter, on its face, shows that a final agreement had *not* yet been reached. In short, the evidence showed little more than the parties were close to agreement on the terms of a formal contract.[4] With-

---

4. York, who testified live at the hearing made a vague assertion that the minor changes sought by appellees were "agreed to" by MTIS. Yet York failed to elaborate how, when, or to whom MTIS communicated the acceptance. Further, contrary to York's assertion,

out a meeting of the minds, there was no contract and thus no enforceable clause which would have subjected the appellees to the jurisdiction of Texas courts.

MTIS goes on to cite *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662 (Tex. 1987) and *Motiograph v. Check–Out Systems, Inc.*, 573 S.W.2d 606 (Tex.App.— Eastland 1978, writ ref'd) for the proposition that the parties' extensive negotiations, even in the absence of a final contract, were sufficient to confer Texas courts with jurisdiction. These cases are distinguishable because both involved numerous purposeful acts of those defendants into Texas or acts connected with Texas. In *Zac Smith,* the Florida defendant entered into extensive negotiations and signed a joint venture agreement[5] which was formed for the "sole purpose" of building a hotel in Austin and was "wholly performable" in Texas. *Zac Smith,* 734 S.W.2d at 665–66. In *Motiograph,* a contract was never signed, but the defendant nonetheless began performance on the contract, which included its own extensive activities in Texas. *Motiograph,* 573 S.W.2d at 607. In these cases, the foreign defendants were clearly "doing business" in Texas with known Texas residents, and were doing so in connection with matters in Texas. In our case, as stated, appellees did not do business or otherwise purposefully direct any activities to Texas, other than to negotiate with a Mexican party's unilaterally chosen Texas lawyer. *See Guardian Royal,* 815 S.W.2d at 226 (the

purposeful availment requirement ensures that the nonresident will not be haled into a jurisdiction based solely upon the unilateral activity of the plaintiff or a third party).

MTIS's fraud claim fares no better in subjecting appellees to the jurisdiction of Texas courts. Even assuming appellees' alleged misrepresentations to MTIS constituted actionable fraud, there is still nothing to indicate that, other than negotiating with a Mexican party's Texas lawyer, the misrepresentations were purposefully made to Texas. *See Guardian Royal,* 815 S.W.2d at 226.

We therefore hold that there was factually sufficient evidence for the trial court to find appellees did not do business in the state, as set out under section 17.042 of the Texas Civil Practice and Remedies Code. We overrule MTIS's specific jurisdiction issue.[6]

### General Jurisdiction Analysis

 Next, MTIS argues that appellees have subjected themselves to the general jurisdiction of Texas courts. Under general jurisdiction standards, the cause of action need not arise from nor relate to the activities conducted within the forum state by the non-resident defendant. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). In such cases, however, the minimum contacts analysis becomes more demanding; the contacts must be "substantial." *Guardian Royal,* 815 S.W.2d at

---

there was evidence supporting the court's finding that MTIS never responded to OCE-SA's proposed changes. Additionally, all the negotiations, drafts, and other evidence in the record indicated that the parties intended not to be bound verbally, but only by a signed, formalized agreement.

5. One of the defendant's contentions against jurisdiction was that the joint venture agreement it had signed was unenforceable.

6. MTIS challenges numerous findings of the trial courts as factually insufficient. Because we find there is sufficient evidence to support the court's findings that appellees did not form a contract, commit fraud, or otherwise purposefully direct their activities to Texas, there is no need to address them individually. *See* Tex.R.App.P. 47.1.

228. When general jurisdiction is alleged, there must be "continuous and systematic contacts" between the nonresident defendant and Texas. *Id.*

 The facts regarding appellees' contacts with Texas pertaining to general jurisdiction are not significantly contested. Appellees showed they have no property, offices, employees or bank accounts in Texas. On the other hand, MTIS cites several activities of the appellees which it contends support the existence of general jurisdiction in Texas. For example, MTIS shows that beginning as early as 1994, OCESA has had various relationships with Texas companies and sports teams to promote events in Mexico. Over several years, OCESA occasionally placed phone calls and sent correspondence to Texas regarding these ventures and made payments to the companies in Texas.

We disagree that appellees' contacts with Texas residents over the years constitute "substantial" and "continuous and systematic" contacts. No Texas facilities were used, none of appellees' representatives came to Texas, and appellees' occasional contacts only involved Texas companies doing business outside the state. Viewed in their entirety, appellees' activities cited by MTIS connected with Texas were sporadic and tenuous at best, and were not such that a foreign resident would reasonably expect to be haled into a Texas court. *See Schlobohm,* 784 S.W.2d at 357 (defendant's activities must justify a conclusion that the defendant should reasonably anticipate being called into court there); *Reyes v. Marine Drilling Cos., Inc.,* 944 S.W.2d 401, 404 (Tex.App.—Houston [14th Dist.] 1997, no writ) (sporadic sales to and purchases from Texas companies by foreign defendant held insufficient to confer general jurisdiction). We therefore hold the trial court did not err in finding it did not have general jurisdiction over appellees. We overrule this issue.

The judgment of the trial court is affirmed.