

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-10-00062-CV

HORTENSE SMITHSON
AND MARK SMITHSON,                                    Appellants,

v.

FRANK CID,                                            Appellee.

## NUMBER 13-10-00095-CV

HORTENSE SMITHSON
AND MARK SMITHSON,                                    Appellants,

v.

FGAP INVESTMENT CORPORATION
AND FRANZ MENARDY,                                   Appellees.

### On appeal from the 214th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Perkes
Memorandum Opinion by Justice Perkes**

These are interlocutory, accelerated appeals from the trial court's orders granting the special appearances of appellees Frank Cid, Franz Menardy, and FGAP Investment Corporation ("FGAP") for lack of personal jurisdiction. We hold the trial court erred by concluding it lacked personal jurisdiction over appellees. Accordingly, we reverse and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Both appeals arise from a single set of facts and a single case in the trial court.[1] The undisputed facts show the following events. Appellants, Hortense and Mark Smithson, are mother and son. At all times relevant to this lawsuit, Hortense was a New Jersey resident, and her son was a Florida resident, who later moved to Texas. In 2007, while residing in Florida, Mark bought a new Mercedes Benz for approximately $80,000 cash and gave it to Hortense.[2] Mark bought the car in Florida and paid FGAP of Florida for the car. At all times relevant to this case, the record shows Menardy was President of FGAP (hereinafter collectively referred to as "FGAP-Menardy").

The record also shows that while Mark was a Florida resident, he had a business relationship with Cid, a Florida resident, and at times, Cid loaned Mark money. Cid helped Mark obtain a duplicate title. According to the duplicate title, Hortense was the

---

[1]  We note that neither FGAP Investment Corporation nor Menardy filed an appellee's brief. As a result, we accept as true the Smithsons' statement of facts supported by record citation in appellate cause 13-10-00095-CV. *See* TEX. R. APP. P. 38.1(g).

[2]  At the time of the taking of the Mercedes Benz at issue in this litigation, Mark was in possession of the car and personal property inside the car.

registered owner of the car.   The parties agree that some time after the duplicate title was obtained, someone placed a fictitious lien on the car in FGAP's name.[3]

In May 2009, Cid, acting on behalf of FGAP, initiated efforts to repossess the car in New Jersey by authorizing Speedy Repo, which he understood to be a New Jersey corporation, to repossess the car.[4]   The authorization Cid signed for Speedy Repo to repossess the car provided Speedy Repo could "repossess, impound and transport [the car] across state lines" and authorize others to repossess the car.   The authorization also provided that if FGAP cancelled "this repo assignment prior to the 90 days," it would owe a closeout fee.   There is no evidence of cancellation in the record.

In July 2009, Romeo Garcia, d/b/a South Texas Auto Recovery, Inc., repossessed the car in Corpus Christi, Texas, while it was parked outside of Mark's apartment.   At the time of the repossession, Garcia was acting on the July 2009, authorization of a Nevada company called "CCI."   According to the undisputed allegations in the Smithsons' live pleading,[5]  after repossessing the car, Garcia removed the car to San Antonio, Texas and delivered it to ICU, Inc., which maintains possession of the car.

---

[3]   The parties dispute who placed the fictitious lien on the car.   In the trial court, Cid claimed Mark placed the lien on the car without Cid's knowledge.   Menardy claimed Mark or Cid forged his signature to create the lien in FGAP's name.   The Smithsons claimed Cid placed the lien on the car.   The parties also dispute why the lien was placed on the car.   However, the reason the lien was placed on the car is not material to the disposition of these appeals.

[4]   The record shows Speedy Repo is actually a Delaware Corporation.   In his appellate brief, Cid states that FGAP secured a repossession order to be executed by Speedy Repo and that "Cid, who did various [types of] business with FGAP in Florida, was authorized by FGAP to request the repossession order."   Although Cid cites twice to the clerk's record in discussing the alleged repossession order, the record on appeal does not contain a repossession order.

[5]   The clerk's record on appeal shows the Smithsons' second amended original petition was their live pleading at the time of the special-appearance hearing.

3

The day after the repossession, Menardy wrote a letter to the Florida Highway Patrol stating that FGAP had no interest in the car and that either Mark or Cid forged his signature to create the lien on the car. According to the Smithsons' live pleading, even after the Smithsons demanded, in August 2009, that Cid and FGAP-Menardy release the lien, neither FGAP-Menardy nor Cid took any steps to release the lien, though FGAP had renounced its validity.[6] This allegation was not disputed in the trial court.

A July 2009 letter attached to the Smithsons' live pleading shows FGAP owed ICU, Inc. payment for repossessing the car, and that FGAP provided ICU, Inc. the time and location information necessary for South Texas Auto Recovery to repossess the car outside of Mark's apartment in Corpus Christi, Texas. The letter appears to have been written by a Florida attorney who identified himself as counsel for FGAP. The Smithsons alleged the facts set forth in the letter and that Speedy Repo "presumably contacted" ICU, Inc. "who contacted" CCI, "who contacted" Romeo Garcia d/b/a South Texas Auto Recovery to repossess the car. No party disputed the contents of the letter or the alleged chain of events.

The Smithsons filed this Texas lawsuit against Cid, FGAP-Menardy, Romeo Garcia d/b/a South Texas Auto Recovery, and ICU, Inc. The record on appeal shows that FGAP-Menardy and Cid filed special appearances alleging they were Florida residents over whom the trial court lacked personal jurisdiction. The Smithsons' suit against Cid and FGAP-Menardy alleged conversion of the car in Texas through their contacts with the repossession companies and refusal to release the lien on the car after

---

[6] Exhibit E-2 to the Smithsons' petition is a copy of a demand letter that the Smithsons' counsel apparently faxed to Cid and FGAP-Menardy in August 2009, requesting that the lien be released. In the letter, the Smithsons seek release of the lien and return of the car to them in Corpus Christi, Texas.

it was removed to San Antonio.[7]  The Smithsons alleged Cid and FGAP-Menardy used the fraudulent lien to try to induce Mark to make loan re-payments to a third party at a usurious interest rate.   However, Menardy states in his special-appearance affidavit that neither he nor FGAP "was aware that either the Mercedes or Mr. Smithson was in or had any connection to the [S]tate of Texas or that any effort to repossess the Mercedes might involve the State of Texas in any way."

The trial court held a hearing on the special appearances at which none of the parties offered live testimony.   At the conclusion of the hearing, the trial court granted Cid and FGAP-Menardy's respective special appearances.   The trial court signed two orders sustaining the special appearances, and entered separate findings of fact and conclusions of law in support of each ruling.   The Smithsons filed a timely notice of accelerated appeal from each of the interlocutory orders, and there being two orders, a separate cause number was assigned to each case on appeal.   The appeals arise from a single set of facts and applicable law.   On the Smithsons' motion, the record on appeal has been consolidated.   Although no party has filed a motion to consolidate the appeals, in the interest of judicial economy, we issue a single opinion herein disposing of both appeals.

## II.  ISSUES PRESENTED

The Smithsons raise the same issues in both appeals:

---

[7]  In addition to conversion, the Smithsons couched their complaint in terms of "criminal theft," conspiracy to illegally obtain the car, and "fraudulent conversion" claims against Cid and FGAP-Menardy. The Smithsons also alleged personal liability against Cid and Menardy, alleging that FGAP's corporate status was misused to fraudulently repossess the car.   None of the personal-jurisdiction arguments raised in the trial court or on appeal hinge on the propriety of filing suit against Cid or Menardy, individually.

(1) Did the trial court err "in finding and ruling" that the Smithsons had not demonstrated sufficient minimum contacts to allow the trial court to exercise personal jurisdiction over Cid and FGAP-Menardy, particularly when Cid and FGAP-Menardy did not negate jurisdiction on a claim-by-claim basis and did not address personal jurisdiction in terms of various venue statutes the Smithsons pleaded?

(2) Did the trial court err by not considering Mark's late-filed affidavit in deciding the respective special appearances, when neither Cid nor FGAP-Menardy objected that the affidavit was untimely filed?

### III.  STANDARD OF REVIEW AND BURDENS OF PROOF

To render a binding judgment, a court must have both subject-matter jurisdiction over the controversy and personal jurisdiction over the parties.  *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010).  Personal jurisdiction concerns the court's power to bind a particular person or party.  *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).  Whether a trial court can exercise personal jurisdiction over a nonresident defendant is a question of law, and we review do novo the trial court's determination of a special appearance challenging personal jurisdiction.  *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010).

The plaintiff bears the initial burden to plead allegations sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute.  *Id.* at 658.  To establish jurisdiction in Texas courts, the plaintiff must plead a connection between Texas and the defendant's alleged wrongdoing.  *Id.* at 655.  Once the plaintiff pleads sufficient

jurisdictional allegations, the burden shifts to the nonresident defendant to file a special appearance and negate all bases of alleged jurisdiction. *Id.* at 658. The trial court "shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3).

On appeal, when a special appearance is based on undisputed or established facts, we review de novo a trial court's order granting or denying a special appearance. *See Exito Elecs. Co., Ltd. v. Trejo*, 166 S.W.3d 839, 849 (Tex. App.—Corpus Christi 2005, no pet.); *C-Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In other words, to the extent the underlying facts are undisputed, we conduct a de novo review. *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 445 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Trial courts must often decide underlying factual disputes before ruling on the jurisdictional question. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex. 2002). When the trial court enters findings of fact in support of its special-appearance ruling, the trial court's unchallenged fact findings are binding upon the appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *Exito Elecs.*, 166 S.W.3d at 849, 858; *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.,* 82 S.W.3d 622, 628 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j) (citing *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986)); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex. App.—Dallas 1993, no pet.). While we must review all of the evidence in the record to

determine if the nonresident defendant negated all possible grounds of personal jurisdiction the plaintiff alleged, when findings of fact have been entered in the trial court, we may not review the supporting evidence in the record de novo even when, as here, neither party presented oral testimony at the special-appearance hearing, and the case was decided only on documentary evidence. *Gonzalez v. AAG Las Vegas, L.L.C.*, 317 S.W.3d 278, 282 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (discussing scope of review); *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 727 (Tex. App.—Corpus Christi 2006, no pet.) (discussing standard of review for special appearance decided on documentary evidence); *Hotel Partners*, 847 S.W.2d at 632 (rejecting de novo review of evidence when special appearance decided on documentary evidence alone).

## IV.  ANALYSIS

By their second issue in each appeal, the Smithsons argue the trial court erred in "finding and ruling" that they did not demonstrate that Cid and FGAP-Menardy had sufficient minimum contacts with Texas for the trial court to exercise personal jurisdiction over them in this lawsuit.[8]   We agree.

### A.  The Legal Standard for Personal Jurisdiction

Texas courts may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute authorizes jurisdiction, and the exercise of jurisdiction is consistent with federal and state due-process standards. *Am. Type Culture Collection*,

---

[8]   The Smithsons also argue Cid and FGAP-Menardy's denial of having committed a tort in Texas and the "laundry list of no minimum contacts" contained in Cid and FGAP-Menardy's respective special-appearance affidavits failed to negate all of the bases of personal jurisdiction alleged in the Smithsons' second amended original petition.   Specifically, the Smithsons argue Cid and FGAP-Menardy were required to negate jurisdiction as to specific causes of action and venue provisions alleged in their live pleading to be applicable to the case at bar.

*Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *see* TEX. CIV. PRAC. & REM. CODE ANN.

§§ 17.041–.045 (West 2008) (Texas's general long-arm statute).   The long-arm statute

allows Texas courts to exercise personal jurisdiction over a nonresident defendant who

"does business" in Texas by committing "a tort in whole or in part" in Texas:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1)     contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2)     commits a tort in whole or in part in this state; or
>
> (3)     recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE ANN §17.042 (West 2008).   But the broad language of the

statute "extends Texas courts' personal jurisdiction [only] 'as far as the federal

constitutional requirements of due process will permit.'"   *BMC Software*, 83 S.W.3d at

795 (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)).

Consequently, the requirements of the Texas long-arm statute are satisfied only if the

exercise of personal jurisdiction comports with federal due-process limitations.   *CSR

Ltd.*, 925 S.W.2d at 594.

A trial court's exercise of personal jurisdiction over a nonresident defendant

complies with federal due process when two conditions are met:   (1) the defendant has

established minimum contacts with the forum state, so that (2) the exercise of jurisdiction

comports with traditional notions of fair play and substantial justice.   *Int'l Shoe Co. v.

Washington*, 326 U.S. 310, 316 (1945); *BMC Software*, 83 S.W.3d at 795.   A defendant

establishes minimum contacts with the forum state when he purposefully avails himself of

the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *See Kelly*, 301 S.W.3d at 657–58; *BMC Software*, 83 S.W.3d at 795.

Purposeful availment is the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). The Supreme Court of Texas has identified at least three aspects of the "purposeful availment" analysis. *See id.* (citing *Int'l Shoe Co.*, 326 U.S. at 316). First, only the defendant's own actions may constitute purposeful availment; personal jurisdiction cannot arise from the unilateral actions of a third party. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, the defendant's actions relied on to show personal jurisdiction in the forum state must be purposeful, and not random, fortuitous, or isolated. *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Third, because personal jurisdiction is premised on notions of implied consent to suit in a particular forum, a defendant must seek some benefit, advantage, or profit by availing itself of the forum state. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Foreseeability of being hauled into the forum's courts is an important consideration in deciding whether the nonresident defendant has purposefully established minimum contacts with the forum state. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297 (holding the foreseeability critical to due process "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"); *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). While foreseeability is not necessarily determinative

10

of whether the nonresident defendant purposefully established minimum contacts, and it is not an independent component of the minimum-contacts analysis, it is implicit in the test. *Guardian Royal*, 815 S.W.2d at 227. If a "substantial connection" exists between the nonresident and Texas arising from the nonresident's purposeful conduct directed towards Texas, he should be able to foresee being subject to Texas courts. *Id.*

## B.   Specific Versus General Personal Jurisdiction

Personal jurisdiction may be based on specific contacts, or it may be general. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum state. *BMC Software*, 83 S.W.3d at 796. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 & 588 (Tex. 2007).

General jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id.* General jurisdiction requires evidence that the defendant conducted substantial activities within the forum, a more demanding minimum-contacts analysis than for specific jurisdiction. *CTK Ltd.*, 925 S.W.2d at 595.

## C.   The Trial Court's Findings of Fact and Conclusions of Law

The trial court entered the following as "findings of fact" concerning Cid:

1.      Plaintiffs (Hortense and Mark Smithson) did not file or serve their *Plaintiffs' response to Defendants, Menardy, FGAP, and Cid's Pleas*

11

*to the Jurisdiction*, including the attached affidavit of Mark Smithson, until January 26, 2010.

2.  The special appearance of Defendant Cid was heard on January 26, 2010.

3.  Plaintiffs did not reference or seek to have the affidavit of Mark Smithson admitted into evidence during the hearing.

4.  Cid is a Florida resident and does not own any physical or financial assets in Texas. Nor does he have any kind of ownership interest in any Texas corporation or other Texas entity.

5.  Cid has not purposefully availed himself of the privilege of conducting activities within Texas and has not invoked the benefits or protections of Texas laws.

6.  Cid does not and has not engaged in any continuous and systematic business in the State of Texas or with any Texas resident. Cid has not had continuous and systematic contacts with Texas.

7.  Cid had not engaged in any purposeful contact with Texas, from which any cause of action of Plaintiffs arises or to which any causes of action of Plaintiffs relates.

8.  Any conduct or alleged conduct of Cid relevant to the claims brought in this suit was between Cid and Florida residents/Florida companies, or between Cid and New Jersey residents/New Jersey companies. No conduct of Cid, alleged or otherwise, at any time relevant to this matter, was purposefully directed to Texas or to a Texas resident.

9.  Even if Cid had the requisite contacts with Texas, the assertion of personal jurisdiction over him would not comport with fair play and substantial justice.

10. Cid has not taken any actions that would put him on notice that he is subject to the jurisdiction of Texas Courts.

Based on these "findings of fact," the trial court concluded it lacked specific and general jurisdiction over Cid. The trial court entered conclusions of law that Cid did not purposefully direct any activities to Texas and that even if Cid possessed the requisite

12

contacts with Texas, the trial court's assertion of personal jurisdiction over him would not comport with fair play and substantial justice.

The trial court entered the following as "findings of fact" concerning FGAP-Menardy:

1. Plaintiffs (Hortense and Mark Smithson) did not file or serve their *Plaintiffs' response to Defendants, Menardy, FGAP, and Cid's Pleas to the Jurisdiction,* including the attached affidavit of Mark Smithson, until January 26, 2010.

2. The special appearances of defendants Menardy and FGAP were heard on January 26, 2010.

3. Menardy has not purposefully availed himself of the privilege of conducting activities within Texas and has not invoked the benefits or protections of Texas laws.

4. FGAP has not purposefully availed itself of the privilege of conducting activities within Texas and has not invoked the benefits or protections of Texas laws.

5. Menardy has not engaged in any purposeful contact with Texas, from which any cause of action of Plaintiffs arises or to which any cause of action of Plaintiffs relates.

6. FGAP has not engaged in any purposeful contact with Texas, from which any cause of action of Plaintiffs arises or to which any cause of action of Plaintiffs relates.

7. Menardy has not had continuous and systematic contacts with Texas.

8. FGAP has not had continuous and systematic contacts with Texas.

9. Even if Menardy had the requisite contacts with Texas, the assertion of personal jurisdiction over him would not comport with fair play and substantial justice.

10. Even if FGAP had the requisite contacts with Texas, the assertion of personal jurisdiction over him would not comport with fair play and substantial justice.

Based on these "findings of fact," the trial court concluded it lacked specific and general jurisdiction over FGAP-Menardy.

The trial court's "findings of fact" to the effect that Cid and FGAP-Menardy lacked purposeful contacts/availment with Texas are actually conclusions of law. Whether a contact is purposeful for purposes of due-process minimum-contacts analysis is a question of law. *See Moki Mac*, 221 S.W.3d at 588. Likewise, the trial court's "findings of fact" that the assertion of personal jurisdiction over Cid and FGAP-Menardy would not comport with fair play and substantial justice is a conclusion of law. *See Guardian Royal*, 815 S.W.2d at 228–29.

When a trial court enters "findings of fact" that are really conclusions of law, a reviewing court is not bound by them. *See Mortgage & Trust, Inc. v. Bonner & Co., Inc.*, 572 S.W.2d 344, 349 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *Cities of Allen v. R.R. Comm'n of Tex.*, 309 S.W.3d 563, 570 (Tex. App.—Austin 2010, pet. filed); *City of Houston v. Harris County Outdoor Adver. Ass'n*, 732 S.W.2d 42, 47 (Tex. App.—Houston [14th Dist.] 1987, no writ); *see also BMC Software Belgium, N.V.*, 83 S.W.3d at 794 ("Appellate courts review a trial court's conclusions of law as a legal question."). Therefore, in reviewing the trial court's personal-jurisdiction rulings, we are not bound by the "findings of facts" that are actually conclusions of law.

**D. Did the Trial Court Err in Ruling it Lacked Specific Personal Jurisdiction over Cid and FGAP-Menardy?**

Under the case law, hiring a third party to repossess a vehicle in Texas is a purposeful contact that gives rise to specific personal jurisdiction. *See Arterbury v. Am.*

*Bank & Trust Co.*, 553 S.W.2d 943, 948 (Tex. App.—Texarkana 1977, no writ). The requirements for specific personal jurisdiction are met when the nonresident defendant, personally or through an agent, is the author of an act within the forum state, and the petition states a cause of action in tort arising from such conduct. *Id.* The act within the forum state is a sufficient basis for the exercise of jurisdiction to determine whether the act gives rise to liability in tort. *Id.*

In *Arterbury*, the plaintiff sued a Louisiana bank in Texas for wrongful repossession of a car in Texas. *Id.* at 945. The parties did not dispute that the Louisiana bank hired a Texas bank to repossess the car and that an employee of the Texas bank repossessed the car from the plaintiff's home. *Id.* at 945–46. The trial court entered findings of fact and conclusions of law to the effect that the Louisiana bank did not do business in Texas; the plaintiff had defaulted on car payments to the Louisiana bank; the repossession was peaceful; the Louisiana bank lacked minimum contacts with Texas; and the assumption of jurisdiction over the Louisiana bank would offend traditional notions of fair play and substantial justice. *Id.* The appellate court reversed and held specific personal jurisdiction existed over the Louisiana bank because it had purposefully taken "possession of the automobile in Texas through its agent employed for that purpose." *Id.* at 948–49.

The Texarkana Court concluded a Texas court's exercise of jurisdiction over the Louisiana bank would comport with traditional notions of fair play and substantial justice because the purposeful act of repossession in Texas advanced the bank's own interests and while engaged in the act of repossession the bank enjoyed the benefit and protection

15

of Texas laws. *Id.* (citing *Int'l Shoe Co.*, 326 U.S. at 319). The court explained it is not unreasonable to require a nonresident to defend an action in Texas that grows out of the very act which the nonresident committed in Texas. *Id.* The court rejected the Louisiana bank's argument that Louisiana courts would be better suited to determine the parties' rights under the car note and security instrument, because the cause of action at issue was for an alleged tort in effecting a repossession in Texas. *Id.*

In *Teton International*, this Court held specific personal jurisdiction existed in Texas over two Wyoming mobile-home manufacturers that repossessed three mobile homes in Texas. *Teton Int'l and B&B Corp. v. First Nat'l Bank of Mission*, 718 S.W.2d 838, 840 (Tex. App.—Corpus Christi 1986, no pet.). The nonresident manufacturers sold the mobile homes to a dealer located in Texas. *Id.* at 839. The dealer received delivery of the mobile homes in Texas and paid for them using a personal check. *Id.* The check was returned for insufficient funds, and the manufacturers were not paid for the mobile homes. *Id.* The First National Bank of Mission, Texas, however, had loaned the dealer money to buy the mobile homes and taken security interests in them. *Id.* After the nonresident manufacturers repossessed the mobile homes in Texas, the bank sued them in Texas alleging conversion of its collateral. *Id.* Citing the reasons set forth in *Arterbury*, this Court held that due process was not offended by requiring the nonresident manufacturers to defend suit in Texas. *Id.* at 840.

In the present case, Cid and FGAP-Menardy failed to negate the Smithsons' allegations that, acting through a series of relationships, they wrongfully took and/or maintained possession of the car in Texas by their failure to release the invalid lien. The

16

undisputed facts in the record show that Cid and FGAP-Menardy, acting through various repossession businesses, repossessed the car in Texas, and no one disputes that Cid and FGAP-Menardy did not take any steps to release the lien even after FGAP-Menardy admitted the lien was invalid. We find unpersuasive Cid and FGAP-Menardy's argument that because all of their direct contacts to effect the repossession were with non-Texas residents, they lacked the requisite contacts with Texas to support a finding of personal jurisdiction. It is not necessary that a nonresident defendant's conduct actually occur in Texas, as long as the defendant's acts were purposefully directed toward Texas. *Glattly*, 177 S.W.3d at 447. Based on the undisputed allegations and evidence, it was foreseeable that Cid and FGAP-Menardy's acts would have an effect in Texas and that they would be subject to Texas courts if the Smithsons sued. *See Burger King*, 471 U.S. at 480 (holding exercise of personal jurisdiction over Michigan franchisee in Florida did not offend due process when foreseeable injuries occurred in Florida). Under *Arterbury*, a nonresident's use of an agent to effect repossession of a car in Texas does not operate as a shield against a finding personal of jurisdiction. *See Arterbury*, 553 S.W.2d at 945–46. The undisputed evidence in the record shows a substantial connection between Cid and FGAP-Mernardy's contacts with Texas and the operative facts of the Smithsons' lawsuit against them. *See Moki Mac*, 221 S.W.3d at 588. We hold Cid and FGAP-Menardy's involvement in the repossession of the car and subsequent failure to release the lien constituted sufficient minimum contacts with Texas to support the exercise of specific personal jurisdiction over them in a Texas court.

17

We also conclude as a matter of law that the exercise of personal jurisdiction over Cid and FGAP-Menardy comports with "traditional notions of fair play and substantial justice." *See Guardian Royal*, 815 S.W.2d at 228. The burden is on the defendant to present a compelling case that the presence of some other considerations renders the exercise of jurisdiction unreasonable. *Id.* at 231 (quoting *Burger King,* 471 U.S. at 477). In making this determination, a court must generally look to the following factors: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 231. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when a nonresident defendant has purposefully established minimum contacts with the forum state. *Id.*

Cid and FGAP-Menardy argued in the trial court that it would be difficult for them to defend suit in Texas, particularly because most witnesses to the underlying transactions live in Florida. As in *Arterbury*, however, the present lawsuit concerns the repossession in Texas and subsequent refusal to release an admittedly invalid lien, not the out-of-state events that preceded the repossession. *See Arterbury*, 553 S.W.2d at 949. The fact that Cid and FGAP-Mernardy reside and work in Florida, and that it would be burdensome to litigate in Texas, does not offend traditional notions of fair play and substantial justice. *See TexVa, Inc. v. Boone*, 300 S.W.3d 879, 891 (Tex. App.— Dallas 2009, pet. denied). In multi-state disputes, someone will always be inconvenienced. *Id.* Accordingly, this

18

argument has frequently been rejected as a basis for denying personal jurisdiction. *Id.* (citing *Burger King,* 471 U.S. at 477). Cid and FGAP-Menardy have neither presented a compelling case that Texas lacks a keen interest in preventing use of fraudulent liens to repossess and hold cars within its boundaries, nor demonstrated any of the other factors disfavoring a finding of personal jurisdiction.[9]

We hold the trial court had specific personal jurisdiction over Cid and FGAP-Menardy. *See Teton Int'l*, 718 S.W.2d at 840; *Arterbury*, 553 S.W.2d at 948–49. Accordingly, in each appeal, we sustain the Smithsons' second issue. Because a nonresident defendant must successfully negate *all bases* of personal jurisdiction to prevail in a special appearance, we need not address the trial court's general-jurisdiction ruling or the Smithsons' other jurisdictional allegations advancing additional bases to support specific jurisdiction over Cid and FGAP-Menardy. *See Wright v. Sage Eng'g*, *Inc.*, 137 S.W.3d 238, 252 n.11 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Specifically, we need not reach the Smithsons' arguments that Cid and FGAP-Menardy were required to negate personal jurisdiction on a claim-by-claim basis or that they were required to negate the applicability of various venue provisions. *See id.*; *see also Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 26 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding when separate claims in a suit are based on the same forum contacts, separate analysis of each claim is not required in ruling on a personal-jurisdiction challenge). Likewise, we need not reach the Smithsons' first issue

---

[9] At the special-appearance hearing, FGAP-Menardy's counsel argued, "Texas as a state has very little, if any, interest in adjudicating the dispute here in Texas." He also stated it would be most efficient to litigate the case in Florida. However, no further argument was made in support of these conclusions.

concerning whether the trial court erred in not considering Mark's affidavit in ruling on the special appearance. *See Wright*, 137 S.W.3d at 252 n.11. That issue is moot in light of our disposition of the Smithsons' second issue in each appeal. *See* Tex. R. App. P. 47.1.

## V. CONCLUSION

Having sustained the Smithsons' second issue in each appeal, we reverse the trial court's orders sustaining Cid and FGAP-Menardy's respective special appearances challenging personal jurisdiction. We remand each case to the trial court for proceedings consistent with this opinion.

_____

Gregory T. Perkes
Justice

Delivered and filed the
29th day of September, 2011.