**Reversed and Remanded and Majority and Dissenting Opinions filed November 19, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00821-CV

---

**CALABRIAN CORPORATION, Appellant**

**V.**

**ALLIANCE SPECIALTY CHEMICALS, INC., Appellee**

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2011-71011**

---

## MAJORITY OPINION

In this interlocutory appeal, a Texas manufacturer challenges the trial court's order granting a non-resident defendant's special appearance. We reverse and

remand because the non-resident defendant is collaterally estopped from relitigating personal jurisdiction.

## BACKGROUND

Appellant/plaintiff Calabrian Corporation, a Delaware corporation with its principal place of business in Texas, is a producer of sulfur dioxide and sulfur derivatives used in a variety of products and industries. Calabrian entered into a License Agreement with Noxso Corporation in September 1995. The majority of the negotiations leading to the Agreement occurred in Texas. In the Agreement, Calabrian granted Noxso a license to use certain technical information and sulfur dioxide technology developed in Texas to operate and maintain a plant that Noxso planned to build in Tennessee. Noxso entered into a separate agreement with Olin Corporation under which Olin would operate the plant. As part of the License Agreement, Calabrian permitted Noxso to disclose to Olin, subject to certain requirements, sufficient technical information to allow satisfactory operation and maintenance of the plant. Under the Agreement, Noxso had ongoing confidentiality obligations to Calabrian in Texas, and Noxso sent payments to Calabrian in Texas. Noxso's plant, which was modeled on Calabrian's Texas plant, was constructed in Tennessee using equipment and components fabricated in Texas.

Two years later, in 1997, Noxso was forced into an involuntary bankruptcy proceeding. With the permission of the bankruptcy court, Noxso assigned its rights and obligations under the License Agreement to an affiliate of Republic Financial Corporation named "RFC $SO_2$, Inc." Noxso also sold the Plant to RFC $SO_2$, Inc., which was later re-named Alliance Specialty Chemicals, Inc., a Delaware

2

corporation with its principal place of business in Tennessee. Alliance is one of the defendants below and the appellee in this interlocutory appeal.[1]

In February 1998, Calabrian sued Republic and Alliance in state district court in Jefferson County ("the 1998 Case"). Calabrian sought declaratory relief regarding the rights and obligations of the parties under the License Agreement, including declarations as to Alliance's obligations to keep the technology confidential and to make disclosures and payments to Calabrian. The 1998 Case was removed to federal court, where Alliance filed a motion contesting personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The federal district court denied this motion, and litigation proceeded with a final judgment rendered in March 2000.

In November 2011, Calabrian filed this lawsuit against Alliance and Olin in state district court in Harris County ("the 2011 Case"), seeking declaratory relief and asserting claims for breach of contract and misappropriation of trade secrets. Calabrian later added as a defendant its primary competitor, Chemtrade Logistics (US), Inc., which had purchased the shares of Alliance.[2] Calabrian alleged, among other things, that Alliance violated the License Agreement by disclosing confidential information to Chemtrade and by refusing to transfer the plant to Olin ten years after construction was completed.

---

[1] Alliance has judicially admitted that it was previously known as RFC $SO_2$ and that its name was changed from RFC $SO_2$, Inc. to Alliance. Apparently, this name change involved a merger or consolidation because the record reflects that RFC $SO_2$, Inc. was a Wyoming corporation before the name change and a Delaware corporation after the name change. For ease of reference, we will refer to both RFC $SO_2$, Inc. and Alliance Specialty Chemicals, Inc. as "Alliance."

[2] Neither Olin nor Chemtrade are parties to this interlocutory appeal.

Alliance filed a special appearance in the 2011 Case, asserting that the exercise of personal jurisdiction over it by a Texas court would violate due process because its only connection with Texas is as Noxso's assignee under the License Agreement. Alliance argued that in the years since the 1998 Case, the law had changed such that a non-resident assignee of a contract is no longer subject to personal jurisdiction based on the forum contacts of the assignor.

Calabrian opposed the special appearance, arguing among other things that the 1998 Case involved the same License Agreement, the same parties, and the same arguments related to personal jurisdiction such that Alliance is collaterally estopped from avoiding personal jurisdiction in Texas. Calabrian attached documents from the 1998 Case in support of its arguments.

Following a series of discovery disputes, the trial court heard and granted Alliance's special appearance. Calabrian filed this interlocutory appeal challenging the trial court's order granting the special appearance and, alternatively, contending the trial court erred in denying its motion for a continuance of the hearing on the special appearance.

## ANALYSIS

In its first issue, Calabrian asserts that the trial court erred in granting Alliance's special appearance. To resolve this appeal, we need only address Calabrian's argument that Alliance is collaterally estopped from challenging the federal district court's ruling that it is subject to personal jurisdiction in Texas.

There are two principal categories of preclusion: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). These doctrines serve the vital functions of bringing litigation to an end, maintaining stability of

4

court decisions, avoiding inconsistent results, and promoting judicial economy. *Id.* at 629; *Jeanes v. Henderson*, 688 S.W.2d 100, 105 (Tex. 1985). Claim preclusion and issue preclusion are affirmative defenses, and the party asserting either defense has the burden of pleading and proving its elements. *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 377 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding).

Calabrian relies on the doctrine of collateral estoppel or issue preclusion, which prevents a party from relitigating an issue that it previously litigated and lost. *See Quinney Elec., Inc. v. Kondos Entm't, Inc.,* 988 S.W.2d 212, 213 (Tex. 1999) (per curiam). Personal jurisdiction is an issue that a party can be precluded from relitigating. *E.g., Corea v. Bilek*, 362 S.W.3d 820, 825–26 (Tex. App.—Amarillo 2012, no pet.); *Fretz v. Reynolds*, No. 04-03-00854-CV, 2004 WL 2803201, at *1 (Tex. App.—San Antonio Dec. 8, 2004, pet. denied) (mem. op.); *Nguyen v. Desai*, 132 S.W.3d 115, 118–19 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Deckert v. Wachovia Student Fin. Servs.*, 963 F.2d 816, 818–19 & n.5 (5th Cir. 1992).

To prevail on its collateral estoppel defense, Calabrian must establish the following: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) the facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002); *Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 44 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).[3] If these elements are established, then

---

[3] Our dissenting colleague argues we should apply multiple factors at the second step to determine whether the federal district court's decision on personal jurisdiction was adequately deliberated and firm, and contends that Calabrian offered insufficient evidence of these factors. *Post*, at 5–6, 8–10. We disagree. In this case, as explained below, the record shows there was a final judgment. Accordingly, it would be improper to apply the factors relied upon by the dissent, which are designed to determine whether an adjudication that is *not* accompanied by a final judgment is nevertheless firm enough to be

Alliance is precluded from litigating the issue again. *See Barr*, 837 S.W.2d at 628. Whether collateral estoppel applies is a question of law. *See id.*[4]

Alliance does not dispute that Calabrian proved these elements, arguing instead that collateral estoppel does not apply because Texas law has changed. We address Alliance's argument in Part II below. Our dissenting colleague argues, however, that Calabrian failed to prove the elements of its collateral estoppel defense. We disagree for the following reasons.

## I.     Alliance is collaterally estopped from relitigating the issue whether it is subject to personal jurisdiction in Texas on claims arising from the License Agreement.

In responding to the special appearance, Calabrian attached the following documents relevant to the 1998 Case: Calabrian's live pleading, Calabrian's response to Alliance's motion to dismiss for lack of personal jurisdiction, the federal district court's order denying the motion to dismiss, and the court's order denying Alliance's motion for reconsideration. It also attached an affidavit stating that the federal district court entered a final judgment in the 1998 Case in March 2000. These documents, and the remainder of the record in the 2011 Case, show as a matter of law that Calabrian established the three elements of its collateral estoppel defense.

---

given issue-preclusive effect. *See* Restatement (Second) of Judgments § 13 & cmts. a, g (1982), *cited in Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985); *see also Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991) (holding interlocutory partial summary judgment did not satisfy factors).

[4] Although the personal jurisdiction ruling in the 1998 Case was made by a federal court, the Texas Supreme Court has determined that federal law and Texas law are the same regarding collateral estoppel. Thus, we need not analyze this issue under federal precedent. *See John G. & Marie Stella Kenedy Mem'l Found.*, 90 S.W.3d at 288.

First, the documents from the 1998 Case show that the issue whether Alliance is subject to specific personal jurisdiction in Texas on claims arising from the License Agreement was fully and fairly litigated in the district court, which held that Alliance could be sued in Texas. *See Corea*, 362 S.W.3d at 825 (characterizing "personal jurisdiction" as "the issue that was fully litigated in the previous action"). The record also shows that the same issue was before the trial court in this 2011 Case: in responding to Alliance's special appearance, Calabrian argued that Alliance is subject to specific personal jurisdiction in Texas on claims that likewise focus on the License Agreement. As Calabrian explained, although this case involves aspects of the License Agreement that were not ruled on in the 1998 Case, both this case and the 1998 Case are governed by the same License Agreement and address the same jurisdictional facts regarding Alliance's contacts with Texas in connection with the Agreement. Alliance does not dispute that Calabrian's claims in both the 1998 Case and this case arise from the License Agreement.

Second, the issue of personal jurisdiction over Alliance was essential to the judgment in the 1998 Case—which was entered in 2000 according to the affidavit—because a court may not render a judgment that binds a party over which it has no personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). Third, the documents from the 1998 Case show that Calabrian and Alliance were adversaries in that case.

Our dissenting colleague disagrees as to the first element, contending that the issues of personal jurisdiction in the 1998 Case and this case are not identical because: (1) "Calabrian is asserting different claims" in this case; and (2) "the jurisdictional analysis of Alliance's contacts with Texas takes place at a much later

7

point in time" in this case. *Post*, at 14. We conclude that neither consideration alters the jurisdictional analysis here.

While Calabrian's claims in this case are not identical to those in the 1998 Case, Calabrian is not asserting a defense of *claim* preclusion. Rather, it is asserting *issue* preclusion as to the court's personal jurisdiction over Alliance. Of course, a plaintiff who brings multiple claims that involve different forum contacts must establish specific jurisdiction for each claim because the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or relate to the defendant's forum contacts. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, No. 11-00195, 2013 WL 4608672, at *4 (Tex. Aug. 30, 2013). But "a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts." *Id.*

Although Calabrian's claims in the 1998 and 2011 Cases are not the same, they all involve the License Agreement. And in both cases, Calabrian has relied on the same Texas contacts as a basis for personal jurisdiction over Alliance: its contacts with Texas in connection with the Agreement. Whether those contacts support specific personal jurisdiction over Alliance in Texas was fully and fairly litigated in the 1998 Case. Accordingly, we conclude that the differences among the claims asserted in the two cases do not alter the specific jurisdiction analysis in a manner that renders collateral estoppel inapplicable.

Regarding the lapse of time between the 1998 and 2011 Cases, we have recognized that "a judgment in one suit will not operate as res judicata to a subsequent suit where, in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties." *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.]

2001, no pet.); *see also Nguyen*, 132 S.W.3d at 118–19. But neither party contends, and the record does not reflect, that the relevant jurisdictional facts regarding Alliance's contacts with Texas in connection with the Agreement have changed in the intervening years.[5] Accordingly, we hold that the district court's ruling denying Alliance's motion to dismiss for lack of personal jurisdiction in the 1998 Case precludes relitigation of that issue in this case. *See Corea*, 362 S.W.3d at 826 (precluding relitigation of personal jurisdiction issue and rejecting contention that jurisdictional facts had changed because party opposing preclusion offered no proof of change).

The dissent also argues that Calabrian failed to provide a record sufficient to establish each element of its collateral estoppel defense as a matter of law. We disagree. As the cases cited by the dissent show, courts typically require that the party advocating collateral estoppel introduce at least the pleadings and judgment from the prior case.[6] The amount of evidence required to establish the defense will vary from case to case, however. The question is simply whether the record sufficiently notified the trial court of the issues decided in the prior case.[7]

---

[5] The Restatement observes that the burden of establishing a change in facts sufficient to undermine a preclusion defense should fall on the party opposing the defense, at least in some cases. *See* Restatement (Second) of Judgments § 27 cmt. c & illus. 7; *see also Corea*, 362 S.W.3d at 826 (placing burden on party opposing preclusion). In other words, under the Restatement approach, a changed-facts argument operates like a plea in confession and avoidance of the preclusion defense. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988) (explaining that a plea in confession and avoidance admits the truth of the facts alleged in support of a defense but alleges new matter that deprives those facts of their ordinary legal effect). Because our decision would be the same regardless of where the burden lies, however, we need not resolve that issue here.

[6] *E.g., Hudson v. City of Houston*, No. 14-0300565-CV, 2005 WL 3995160, at *4 (Tex. App.—Houston [14th Dist.] Jan. 6, 2005, no pet.) (mem. op.); *Cuellar v. City of San Antonio*, 821 S.W.2d 250, 256 (Tex. App.—San Antonio 1991, writ denied).

[7] *See Bankers Home Bldg. & Loan Ass'n v. Wyatt*, 162 S.W.2d 694, 695 (Tex. 1942); *Tex. Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 265 (Tex. App.—Texarkana 2002, pet. struck);

We conclude that the record did so here.  As discussed above, Calabrian provided its live pleading, its briefing on personal jurisdiction, and the federal district court's orders on jurisdiction from the 1998 Case.  Calabrian did not include the judgment from the 1998 Case, but it did provide an affidavit stating that there was a final judgment.  Each party cites and discusses this statement from the affidavit in the fact section of its appellate brief, and there is no evidence to the contrary, so we take the existence of the final judgment as true.  *See* Tex. R. App. P. 38.1(g).

The dissent (but not Alliance) faults Calabrian for failing to include in the record certain other documents from the 1998 Case, such as Alliance's jurisdiction-related filings and the federal district court's findings of fact and conclusions of law regarding jurisdiction.  But there is no indication that the record we do have was insufficient to notify the trial court of the jurisdictional issue decided in the 1998 Case.  Calabrian's jurisdictional briefing in that case argued Alliance was subject to specific personal jurisdiction in Texas on claims arising from the License Agreement, and there is no evidence that the issue decided there was anything else.[8]  Nor has Alliance disputed the record's accuracy or complained that it is insufficient to decide Calabrian's collateral estoppel defense.[9]  On this

---

*Hearn v. Cox & Perkins Exploration, Inc.*, No. 14-98-01275-CV, 2000 WL 977372, at \*3–4 (Tex. App.—Houston [14th Dist.] May 18, 2000, no pet.) (not designated for publication); *Bass v. Champion Int'l Corp.*, 787 S.W.2d 208, 213–14 (Tex. App.—Beaumont 1990, no writ).

[8] The dissent speculates that the federal district court may have found jurisdiction in the 1998 Case because Alliance's jurisdictional challenge was untimely, or that Alliance may have re-urged its motion for reconsideration of the court's jurisdictional ruling.  But there is no reason to suppose from the record that either of those things happened.  If this sort of speculation were sufficient to defeat a collateral estoppel defense, then the party urging the defense could only hope to prevail by offering the complete record of the prior case as supporting evidence.  Neither law nor logic compels such a wasteful practice.

[9] *See Whitemyer v. Omokaro*, No. 05-01-00780-CV, 2002 WL 1981367, at \*6 n.19 (Tex. App.—Dallas Aug. 29, 2002, pet. denied) (not designated for publication); *Hearn*, 2000 WL 977372, at \*4.

record, therefore, we conclude that Calabrian established each element of its defense as a matter of law.

## II. Alliance has not demonstrated a change in Texas law sufficient to avoid collateral estoppel.

For its part, Alliance relies on the rule that preclusion is not a defense in a subsequent suit involving the same issue between the same parties "if there has been a change in . . . the decisional law between the first judgment and the second suit." *Marino v. State Farm Fire & Cas. Ins. Co.*, 787 S.W.2d 948, 949–50 (Tex. 1990) (holding res judicata did not bar assertion of cause of action arising after the first judgment). The rationale for this rule is that a judgment cannot affect substantive rights and duties arising after that judgment. *See id.*; *Hernandez*, 56 S.W.3d at 116; *see also* Restatement (Second) of Judgments § 28(2)(b) & cmt. c (1982) (recognizing exception to general rule of issue preclusion when there is an "intervening change in the applicable legal context" such that "preclusion would result in a manifestly inequitable administration of the laws"). Given this rationale, one court has observed that "*Marino* applies only if there is a change in the law . . . that creates substantive rights that did not exist until after the first judgment." *Besing v. Vanden Eykel*, 878 S.W.2d 182, 184–85 (Tex. App.—Dallas 1994, writ denied); *see also Mroz v. U.S. Fire Ins. Co.*, 826 S.W.2d 729, 730 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (applying exception where Texas recognized a new cause of action after the first judgment); *Hilltop Baptist Temple, Inc. v. Williamson Cnty. Appraisal Dist.*, 995 S.W.2d 905, 909 (Tex. App.—Austin 1999, pet. denied) (distinguishing *Marino* because "Hilltop is not asserting a new claim or right that was created subsequent to [the first judgment]").

Alliance asserts that an "intervening change" in Texas decisional law has rendered the district court's personal jurisdiction ruling in the 1998 Case

erroneous, making collateral estoppel inapplicable in this case. In particular, Alliance contends that the "sole basis for personal jurisdiction" in the 1998 Case was Noxso's contacts with Texas, and it points to two cases as "new controlling decisional authority" repudiating the theory that these contacts can be imputed to Alliance as Noxso's assignee: *Old Kent Leasing Servs. Corp. v. McEwan*, 38 S.W.3d 220, 231 (Tex. App.—Houston [14th Dist.] 2001, no pet.), and *Magnolia Gas Co. v. Knight Equip. Mfg.*, 994 S.W.2d 684, 691–92 (Tex. App.—San Antonio 1998, no pet.), *overruled on other grounds by BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 & n.1 (Tex. 2002).[10]

Neither *Old Kent* nor *Magnolia Gas* demonstrate a change in decisional law sufficient to trigger the *Marino* exception to collateral estoppel. Pre-1998 decisions established that the defendant's forum contacts "must have resulted from [its] purposeful conduct and not the unilateral activity of the plaintiff or others." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.");

---

[10] The record does not support Alliance's assertion that Noxso's imputed contacts were the sole basis for personal jurisdiction over Alliance in the 1998 Case. The one-sentence order from the federal district court, which denied Alliance's motion to dismiss for lack of personal jurisdiction, does not specify the basis for its decision that personal jurisdiction exists. The order provides that the decision was based on "findings of fact and conclusions of law" made at a hearing held on July 24, 1998, the same date the order was entered. The appellate record contains neither a transcript of the hearing held on that date nor findings of fact or conclusions of law relevant to the jurisdictional decision. Thus, contrary to Alliance's contention that the federal court's decision is "wholly inconsistent" with *Old Kent* and *Magnolia Gas*, the record does not reflect how the court arrived at its decision. Moreover, although we need not reach the merits of the personal jurisdiction issue, we note that Calabrian has argued Alliance is subject to personal jurisdiction in Texas based on its own forum contacts arising out of the License Agreement.

*Malaysia British Assurance, Ltd. v. El Paso Reyco, Inc.*, 830 S.W.2d 919, 921 (Tex. 1992) (per curiam) (holding assignment did not strengthen claim of personal jurisdiction). Although both *Old* Kent and *Magnolia Gas* recognized that an assignor's contacts with a forum state could not be imputed to the assignee for purposes of personal jurisdiction, each did so based on these pre-1998 principles. *See Old Kent Leasing Servs. Corp.*, 38 S.W.3d at 231; *Magnolia Gas Co.*, 994 S.W.2d at 691–92. Because *Old Kent* and *Magnolia Gas* simply applied existing law on personal jurisdiction, neither created new substantive rights or duties that did not exist at the time of the 1998 Case. Accordingly, neither case meets the standard discussed above for demonstrating a change in decisional law sufficient to warrant an exception to collateral estoppel.[11]

Alliance also argues that it would be "grossly unfair" if it were collaterally estopped from challenging jurisdiction, but it offers no reasons or legal authority to support its argument. We recognize that a collateral estoppel analysis does involve considerations of fairness that are not encompassed by the "full and fair opportunity" inquiry. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796,

---

[11] In addition, both *Old Kent* and *Magnolia Gas* are factually distinguishable from this case. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 810 (Tex. 2002) (noting that personal jurisdiction is assessed on a case-by-case basis). Neither case involved a long-term agreement with continuing obligations between a Texas company and a non-resident assignee. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–82 (1985) (analyzing jurisdictional effect of long-term franchise contract with continuing obligations). In *Old Kent*, we concluded that an Illinois company that assumed an agreement to lease computer equipment to a California company could not be sued on the agreement in Texas; the fact that a Texas company that was not a party to the agreement had supplied the equipment was insufficient to support personal jurisdiction. 38 S.W.3d at 231. And in *Magnolia Gas*, the court held that a Texas court lacked personal jurisdiction over nonresident defendants who had assumed the obligation to move an Oklahoma cryogenic gas plant owned by a Texas company to Arkansas. The court carefully considered all contacts with Texas (including those of the assignor who had originally contracted to move the plant) and concluded that they "were entirely incidental and immaterial to the purpose of the contract and were not instigated by [the defendants], or their assignor." 994 S.W.2d at 692.

804 (Tex. 1995). We do not consider the application of collateral estoppel in this case to be unfair, however, given that Alliance has defended litigation in Texas previously involving the same License Agreement and same parties. Accordingly, we hold that collateral estoppel applies in this case to bar Alliance's challenge to personal jurisdiction.[12]

## CONCLUSION

We reverse the trial court's order granting Alliance's special appearance and remand for further proceedings.


/s/     J. Brett Busby
        Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby (Frost, C.J., dissenting).

---

[12] Because collateral estoppel disposes of the jurisdictional question, we do not reach Calabrian's second issue, which challenges the trial court's denial of its motion for continuance.