**Affirmed and Majority and Concurring Opinions filed October 12, 2021.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-20-00111-CV

---

## PATRICK WALSH, Appellant

## V.

## TEXAS DEPARTMENT OF STATE HEALTH SERVICES, Appellee

---

**On Appeal from the 261st District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-18-000603**

---

## MAJORITY OPINION

Appellant Patrick Walsh appeals from a final summary judgment declaring that certain death records Walsh sought are protected from disclosure under the Texas Public Information Act. *See* Tex. Gov't Code Ann. § 552.001 *et seq*. Concluding that the trial court did not err when it granted appellee Texas Department of State Health Services' ("DSHS") motion for summary judgment and denied Walsh's, we affirm.

BACKGROUND

The facts are undisputed. In 2017, Walsh requested several categories of information related to all deaths in Texas in 2016 and 2017 up to the date of his request to DSHS (the "2017 Request"). The categories were: (1) the decedent's first and last name, (2) the decedent's street address, (3) the decedent's city, state, and Zip Code, (4) the decedent's date of birth, (5) the decedent's date of death, (6) the decedent's cause of death, and (7) the decedent's gender.

DSHS released some of the information. Specifically, DSHS released the first and last name, date of death, and gender of all decedents. DSHS refused to release the address, date of birth, and cause of death of the decedents. DSHS took the position that this information was confidential and protected from disclosure under section 552.115 of the Texas Public Information Act. DSHS then asked the attorney general, pursuant to section 552.301(a) of the Texas Public Information Act, for a ruling on whether the withheld information was subject to disclosure to Walsh. The attorney general subsequently issued a letter ruling, stating that DSHS must release the withheld information. Tex. Att'y Gen. OR2018-00468, at 2. The letter ruling also provided that it was "limited to the particular information at issue in this request and limited to the facts as presented to us; therefore this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances." *Id*. at 3.

DSHS filed suit against the attorney general under section 552.324 of the Texas Public Information Act challenging the attorney general's letter ruling. Walsh intervened. Beyond filing an answer, the attorney general took no further action as the defendant in the trial court.[1]

---

[1] On appeal, the attorney general is serving as counsel for DSHS, but the attorney general is not a party,

Both DSHS and Walsh agreed that the only issue in dispute, whether the withheld information was subject to release under the Texas Public Information Act, presented a legal issue. Both Walsh and DSHS moved for summary judgment. After hearing argument on the cross-motions for summary judgment, the trial court granted DSHS's motion and denied Walsh's motion, declaring that the withheld information, specifically the records of Texas decedents' addresses, dates of birth, and causes of death, were protected from disclosure by Section 552.115 of the Texas Public Information Act. This appeal followed.

## ANALYSIS[2]

Walsh brings five issues on appeal arguing that the trial court erred when it granted DSHS's motion for summary judgment and denied his own. Walsh also brings a sixth, contingent issue, asserting that the trial court erred when it denied his request for attorneys' fees.

## I. Standard of review and applicable law

There are no disputed facts in this case, instead the issue before us is the application of the Texas Vital Statistics Act, the Texas Public Information Act, and related regulations to those undisputed facts. These are questions of law we review de novo. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 66 (Tex. 2019). As a result, this dispute was ripe for resolution by summary judgment. *See Rudisill v. Arnold White & Durkee, P.C.*, 148 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Gramercy Ins. Co., Inc. v. Auction Fin. Program, Inc.*, 52

---

[2] The Supreme Court of Texas ordered the Third Court of Appeals to transfer this case to this court. *See* Tex. Gov't Code Ann. § 73.001. Under the Texas Rules of Appellate Procedure, "the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court." Tex. R. App. P. 41.3. We are unaware of any conflict between the Third Court of Appeals precedent and that of this court on any relevant issue.

S.W.3d 360, 363 (Tex. App.—Dallas 2001, pet. denied) ("In this case the parties do not argue that a material question of fact exists which should have precluded summary judgment. Instead, the issues presented involve the proper construction of a specific statutory provision, and application of that provision to the undisputed facts of this case.")). We review a trial court's order granting a traditional summary judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, the appellate court reviews both motions and determines all questions presented. *Id.* The reviewing court should then render the judgment that the trial court should have rendered, or reverse and remand if neither party met its summary judgment burden. *Id.*

This appeal also requires us to review the trial court's interpretation and application of various statutes. Statutory interpretation presents a question of law subject to de novo review. *Cadena Commercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). Our fundamental goal when reading statutes is to ascertain and give effect to the legislature's intent. *Id.* at 326. To do this, we look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results. *Id.* We presume the legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen. *Id.* In that vein, we take statutes as we find them and refrain from rewriting the legislature's text. *Id.* Put differently, our objective is not to take definitions and mechanically tack them together; rather, we consider the context

4

and framework of the entire statute and meld its words into a cohesive reflection of legislative intent. *Id.* Still, we are concerned with the definitions of the specific words because they provide the material that is refined with statutory context. *Id.* The definitions of some terms are either provided by the legislature or clear based on their common usage and meaning. *Id.* For others, we must look to the statutory context to provide meaning. *Id.*

Section 552.115 of the Texas Public Information Act addresses the confidentiality of death records. *See* Tex. Gov't Code Ann. § 552.115(a). It provides that a death record is public information available to the public on or after the 25th anniversary of the date of death as shown on the death record filed with the vital statistics unit or a local registration official. *Id.* at § 552.115(a)(2). The statute further provides that a "general death index" maintained by the vital statistics unit is public information that is available to the public to the extent the record relates to a death record that is public information and available to the public as provided in section 552.115(a)(2). *Id.* at § 552.115(a)(3). Finally, the statute states that a "summary death index" is "public information and available to the public." *Id.* at § 552.115(a)(4).

Pursuant to Chapter 191 of the Vital Statistics Act, DSHS is responsible for collecting, recording, transcribing, compiling, and preserving all vital statistics. Tex. Health & Safety Code Ann. § 191.002. The statute also requires persons with information related to a death to supply that information to DSHS "on a form provided by the department or on the original certificate." *Id.* at § 191.024. The statute further provides that "information required on a certificate must be written legibly in durable blue or black ink or may be filed and registered by photographic, electronic, or other means as prescribed by [DSHS]." *Id.* at § 191.025(d). DSHS is also empowered to adopt rules for collecting, recording, transcribing, compiling,

5

and preserving vital statistics. *Id.* at § 191.003(a). The Texas Administrative Code contains the rules for collecting, recording, transcribing, compiling, and preserving vital statistics. It defines "vital statistics" as "the registration, preparation, transcription, collection, compilation, distribution and preservation of data pertaining to . . . deaths . . . and such other data as deemed necessary by [DSHS]." 25 Tex. Admin. Code § 181.1(34).

Chapter 193 of the Vital Statistics Act is titled "Death Records." It specifies the information and procedures required for death certificates. It also specifies that information on death certificates related to the location of a decedent's remains is public information. *Id.* at § 193.001(c) & (d). Section 193.002 specifies that the person in charge of interment or removal of a body must "file the [death] certificate electronically as specified by the state registrar. *Id.* at § 193.002(4).

## II. DSHS was not prohibited from seeking a decision from the attorney general because there had been no previous determination on the precise information Walsh sought in his 2017 Request.

Walsh, citing section 552.301(f) of the Texas Government Code, argues in his first issue that (1) DSHS was prohibited from asking the attorney general for a letter ruling on his 2017 Request because there had been a previous decision on the "precise categories of information" included in that request, and (2) the trial court should have granted his summary judgment on this basis. *See* Tex. Gov't Code Ann. § 552.301(f). Section 552.301(f) provides:

> A governmental body must release the requested information and is prohibited from asking for a decision from the attorney general about whether information requested under this chapter is within an exception under Subchapter C if:
>
> (1) the governmental body has previously requested and received a determination from the attorney general concerning the precise information at issue in a pending request; and

6

> (2) the attorney general or a court determined that the information is public information under this chapter that is not excepted by Subchapter C.

*Id.* DSHS responds that it was not prohibited from seeking a ruling from the attorney general because there had been no previous determination "concerning the precise information at issue" in Walsh's 2017 Request. We agree with DSHS.

Walsh's argument rests entirely on his contention that the final judgment in trial court cause number D-1-GN-11-001290 qualified as a "previous determination" under section 552.301(f) because a previous determination on the precise information within the meaning of section 552.301 means the precise *category* of information, not the precise *piece* of information in the earlier ruling.[3] Walsh then cites three appellate cases which he contends support his argument.

The first two cases cited by Walsh involve disputes between the Houston Chronicle and the City of Houston over whether the City of Houston's police records, parts of which were referred to as the "police blotter," were subject to release to the public pursuant to the Texas Open Records Act, the predecessor to the Texas Public Information Act. In *Houston Chronicle Publishing Co. v. City of Houston*, the First Court of Appeals held that certain portions of those records were "available to the press and public under the Open Records Act." 531 S.W.2d 177, 188 (Tex. Civ. App.—Houston [1st Dist.] 1975), *writ ref'd per curiam*, 536 S.W.2d 559 (Tex. 1976) (collectively "*Chronicle I*"). In *City of Houston v. Houston Chronicle Publishing Co.*, the Houston Chronicle once again sought release of information contained in the City of Houston's police records. 673

---

[3] In cause number D-1-GN-11-001290, the attorney general previously determined that some of the requested information must be released. Tex. Att'y Gen. OR2011-04298, at 4. The attorney general also stated, "This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other info1mation or any other circumstances." *Id.* The trial court, however, ruled that all of the requested information must be released.

7

S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1984, no writ) ("*Chronicle II*"). In *Chronicle II*, the City of Houston refused to release the requested information, including the information that the Houston Chronicle asserted had been previously determined to be public information in *Chronicle I*. *Id.* at 318. Our sister court stated that "the decision in *Chronicle I* determined the kind of information in the Houston Police Records which is 'public information.'" *Id.* at 323. It then held that the City of Houston was required to immediately disclose those parts of the requested records that had been determined to be public information. *Id.*

The final case cited by Walsh involved a dispute over whether the college transcripts of certain school district administrators were subject to public disclosure under the Open Records Act. *Houston Chronicle Publ'g Co. v. Mattox*, 767 S.W.2d 695, 697 (Tex. 1989). The actual issue to be resolved by the Texas Supreme Court was "whether the Attorney General of Texas can enter into, and a district judge render, an agreed order that prohibits the Attorney General from issuing a decision under the Open Records Act." *Id.* The Court held that "while it is possible that the legislature may decide to exempt such transcripts from disclosure under the Open Records Act, the Attorney General must apply the law as it is currently written. He may not refuse to fulfill his duties in order to see what the legislature might do." *Id.* at 698. In reaching this decision, the Court observed that the Open Records Act

> does not require a previous determination on the specific piece of information; it allows the Attorney General to explicitly refuse to render a decision if he decides that a previous determination has been made regarding the category of information to which the request belongs. The Attorney General's refusal to render a decision is subject to review by the courts on an abuse of discretion standard.

*Id.*

In Walsh's view, the collective import of these cases is that "a previous

8

determination on the precise information within the meaning of section 552.301 does not mean the precise *piece* of information, rather, it means the precise *category* of information." Based on this analysis, Walsh argues that the 2011 final judgment in cause number D-1-GN-11-001290 addressing similar death records for years 2009 and 2010 qualifies as a previous determination under section 552.301(f) of the Texas Public Information Act which thereby prohibited DSHS from seeking an opinion from the attorney general on the 2017 Request.

Further, while the legislature has made attorney general decisions an integral part of the open government provisions relating to public information in Government Code chapter 552, we know those decisions are not binding on the judiciary. In recognition of that significant, but limited role, the Third Court of Appeals and the First Court of Appeals both give "due consideration" and "great weight" to such decisions. *See, e.g.*, *Rainbow Grp., Ltd. v. Tex. Emp't Comm'n*, 897 S.W.2d 946, 949 (Tex. App.—Austin 1995, writ denied), *Houston Indep. Sch. Dist. v. Houston Chronicle Publ'g Co.*, 798 S.W.2d 580, 588 (Tex. App.—Houston [1st Dist.] 1990, writ denied); *City of Houston v. Houston Chronicle Publ'g Co.*, 673 S.W.2d 316, 322 (Tex. App.—Houston [1st Dist.] 1984, no writ).

Open Records Decision Number 673 addresses previous determinations in part as follows:

> We believe there are only two instances in which a previous determination under section 552.30l(a) exists. The first and by far the most common instance of a previous determination pertains to specific information that is again requested from a governmental body where this office has previously issued a decision that evaluates the public availability of the precise information or records at issue. This first instance of a previous determination does not apply to records that are substantially similar to records previously submitted to this office for review, nor does it apply to information that may fall within the same category as any given records on which this office has

9

previously ruled. The first type of previous determination requires that all of the following criteria be met:

> 1. the records or information at issue are precisely the same records or information that were previously submitted to this office pursuant to section 552.30l(e)(l)(D) of the Government Code;

> 2. the governmental body which received the request for the records or information is the same governmental body that previously requested and received a ruling from the attorney general;

> 3. the attorney general's prior ruling concluded that the precise records or information are or are not excepted from disclosure under the [Texas Public Information] Act; and

>  4. the law, facts, and circumstances on which the prior attorney general ruling was based have not changed since the issuance of the ruling.[6]

> . . . .

> [6]A governmental body must make an initial finding that it in good faith reasonably believes the requested information is excepted from disclosure. Open Records Decision No. 665 at 3 (2000). A governmental body should request a decision from this office if it is unclear to the governmental body whether there has been a change in the law, facts, or circumstances on which the prior decision was based.

Tex. Att'y Gen. ORD-673, at 6–7 (2001). We conclude that this first type of previous of determination described in ORD-673 is applicable to this case, and we we also conclude that above-quoted portion of ORD-673 is a correct interpretation of Government Code chapter 552.

Because none of Walsh's cited cases address the public nature of death records under the Texas Public Information Act, we conclude that the cases are

distinguishable and do not control the outcome here.  In addition, we conclude that Walsh's expansive view of what qualifies as a previous determination renders the legislature's use of the phrase "precise information at issue in the pending request" meaningless.  This we cannot do.  "Precise" is defined as "exactly defined or stated." *Merriam-Webster Dictionary New Edition* 565 (2004).   Thus, the precise information at issue in the pending request are death records for the years 2016 and 2017.Tex. Att'y Gen. ORD-673, at 6–7 (2001).  Walsh has not pointed out any previous determination for death information for those years.   Therefore, we conclude that (1) DSHS was not prohibited from seeking an opinion from the attorney general, and (2) the trial court did not err when it denied Walsh's motion for summary judgment to the extent it was based on this ground.  We overrule Walsh's first issue.

## III.    Res Judicata and collateral estoppel do not bar DSHS's claims.

In his second issue Walsh argues the doctrines of res judicata and collateral estoppel bar DSHS from re-litigating the 2011 trial court judgment referenced above.   Among other arguments, DSHS responds that neither applies because Walsh did not establish the required elements for either defense.

For res judicata to apply, a party must establish the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).   Collateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue it previously litigated and lost.  *Calabrian Corp. v. Alliance Specialty Chems., Inc.*, 418 S.W.3d 154, 158 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  To prevail on his assertion of collateral estoppel, Walsh must establish: (1) the facts sought to

11

be litigated in the second action were fully and fairly litigated in the first action; (2) the facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Id.*

Both res judicata and collateral estoppel are affirmative defenses and the party asserting them has the burden of pleading and proving them. *Id.* Both res judicata and collateral estoppel require that the same claim or facts be at issue in both actions. As explained above, the facts or claims at issue in the 2011 trial court judgment, whether death records for 2009 and 2010 were subject to public disclosure, are not the same as the facts at issue in the present litigation, death records for 2016 and 2017. Therefore, the trial court did not err when it rejected both defenses. We overrule Walsh's second issue.

## IV. The trial court did not err in its application of section 552.115 of the Texas Public Information Act.

Walsh argues in his fourth and fifth issues that the trial court erred when it granted DSHS's motion for summary judgment and denied his own because it (1) misapplied section 552.115 of the Texas Public Information Act, and (2) allowed DSHS to exceed its authority by expanding the types of death records that are excepted from public disclosure. DSHS responds that neither allegation supports a reversal of the trial court's summary judgment.

Walsh initially asserts that "section 552.115 simply does not apply to the requested data" and he was entitled to summary judgment on that basis. Walsh supports this assertion by arguing that the information he requested in his 2017 Request is not a "death record," which he contends are limited to "discrete and distinct documents," such as death certificates. In Walsh's view, the exception to the public nature of "death records" found in section 552.115 of the Texas Public Information Act "was to protect official documents that have significant legal

12

consequences—not to protect the data per se." DSHS responds that Walsh seeks an "unreasonably narrow definition of death records" that is tied to an "arbitrary, antiquated concept" that ignores the fact that most vital statistics information, including information related to deaths, is data filed electronically by different people, including funeral directors, medical examiners, and physicians. DSHS goes on to argue that death records are not limited to physically-filed "discrete and distinct documents." As a result of this broader definition of death records, DSHS argues that much of the information Walsh sought in his 2017 Request is excepted from public disclosure for 25 years and the trial court did not err when it granted its motion for summary judgment and denied Walsh's.

Exercising its rule-making authority, DSHS defined "death records" as "records governing deaths and fetal deaths filed pursuant to the Texas Vital Statistics Act." *Id.* at § 181.1(7). Records is not defined in the Texas Public Information Act nor in the Vital Statistics Act. We therefore look to its common and ordinary meaning, which is a written account of proceedings, known facts about a person, or "a collection of information (as in a database) treated as a unit." *Merriam-Webster Dictionary New Edition* 604. Nothing in this definition limits records to only a death certificate as Walsh argues. Our conclusion that Walsh's definition is too limited is reinforced by the legislature's definition of "public information." When it defined "public information" and the "media containing public information," the legislature cast a broad net. It specified that "public information" includes "information that is written, produced, collected, assembled, or maintained under law or ordinance or in connection with the transaction of official business." *See* Tex. Gov't Code Ann. § 552.02(a). The legislature also determined that "public information" applies to any electronic communications created, transmitted, received, or maintained on any device if the communication is

13

in connection with the transaction of official business." *Id.* at § 552.02(a-2). Finally, the legislature determined that the forms in which the media containing public information exists includes, in part, books, papers, letters, documents, emails, electronic communications, microfilm, and voice, data, or video representations held in computer memory. The legislature determined that "a death record is public information."[4] *Id.* at § 552.115(a)(2). Because it is public information, we conclude that death records may take any form recognized by the legislature. Therefore, limiting death records to only death certificates as Walsh suggests would be contrary to the legislature's intent. *See Bracey*, 417 S.W.3d at 103 (stating that our primary goal when interpreting statutes is to give effect to the legislature's intent).

In addition, Walsh's proposed limitation of death records to only death certificates such that the certificate itself is excepted from public disclosure but the individual decedent's data contained on that certificate is not, defies common sense and the entire logic behind generally excepting decedent information from public disclosure for 25 years. *See Cosgrove v. Cade*, 468 S.W.3d 32, 38 (Tex. 2015) ("The Cades' assertion that section 13.002 only provides them with notice of the deed's existence and not the deed's contents defies common sense and clashes with our precedent that mineral interest owners bear a high duty of due diligence to protect their mineral interests."); *Best v. Falcon Rock Cmty. Ass'n, Inc.*, No. 14-17-00052-CV, 2018 WL 4139092, at *4 (Tex. App.—Houston [14th Dist.] Aug. 30, 2018, no pet.) (mem. op.) ("It defies common sense to define the [statutory] term builder to include a licensure requirement that legally does not exist in Texas.").

---

[4] The legislature then generally limited public access to that public information for 25 years. Tex. Gov't Code Ann. § 552.115(a)(2). In addition, the legislature also carved out an exception for death records related to unidentified decedents, which become available one year after the date of death. *Id.* This exception is not at issue in this case.

14

In addition, adopting Walsh's proposed definition making all death information filed with DSHS except the actual death certificate subject to immediate public disclosure, would render the legislature's express creation of a summary death index, which is public information, superfluous. *See* Tex. Gov't Code Ann. § 552.115(a)(4); *City of Dallas*, 463 S.W.3d at 57 (stating that courts should "eschew constructions of a statute that would render any statutory language meaningless or superfluous").

Walsh also argues in his fourth and fifth issues that DSHS exceeded its statutory and rulemaking authority when it determined that some of the information he included in his 2017 Request was excepted from public disclosure.[5] In Walsh's view, this allowed DSHS to amend the Texas Public Information Act and expand the death information considered confidential. Based on this, Walsh argues that the trial court erred when it granted DSHS's motion for summary judgment and denied his own.

Despite Walsh's arguments to the contrary, an examination of the Texas Public Information Act establishes that it was the legislature, not DSHS, which established the initial confidential nature of death records in Texas. In section 552.115, the legislature established that death records were generally excepted from public disclosure for 25 years. *See* Tex. Gov't Code Ann. § 552.115(a)(2) (stating that a death record maintained by DSHS is public information excepted from public disclosure until on or after the 25th anniversary of the date of death). It then created an exception to that general rule for a summary death index. *Id.* at § 552.115(a)(4) (stating that a summary death index is public information and available to the public). The legislature did not define summary death index. As

_____

[5] As mentioned above, DSHS released the first and last name, date of death, and gender for all decedents. It refused to release the address, date of birth, and the cause of death of all decedents.

mentioned above, the legislature empowered DSHS to adopt rules for collecting, recording, transcribing, compiling, and preserving vital statistics. Tex. Health & Safety Code Ann. § 191.003(a). Based on that authority, DSHS enacted a rule for summary death indexes. *See* 25 Tex. Admin. Code § 181.23(c)(3). This rule provides that a summary death index "shall be prepared by event year, in alphabetical order by surname of the registrant, followed by any given names or initials, the date of the event, the county of occurrence, and sex of the registrant." *Id.* Far from making this information confidential, this rule excepted the specified death information from the general rule of confidentiality for death records during the initial 25-year confidential period established by the legislature.

Having addressed and rejected Walsh's arguments raised in his fourth and fifth issues, we overrule them.

## IV. We need not reach Walsh's third and sixth issues on appeal.

In his third issue, Walsh argues the trial court erred when it granted DSHS's motion for summary judgment because DSHS did not prove as a matter of law that he was not a "properly qualified applicant" under section 191.051 of the Texas Vital Statistics Act. *See* Tex. Health & Safety Code Ann. § 191.051 (stating that "subject to department rules controlling the accessibility of vital records," DSHS shall supply a certified copy of a requested death record to a "properly qualified applicant"). Because Walsh did not allege that he was a properly qualified applicant, and DSHS did not move for summary judgment on the ground that Walsh was not a qualified applicant, we conclude we need not reach this issue. *See* Tex. R. App. P. 47.1; *Lewis v. Nolan*, 105 S.W.3d 185, 189–90 (Tex. App.— Houston [14th Dist.] 2003, pet. denied) (stating summary judgment can only be affirmed on grounds actually raised in the motion).

Finally, in his sixth issue, Walsh argues that if we reverse the trial court's

16

judgment in favor of DSHS and render judgment in his favor, he is entitled to attorneys' fees pursuant to section 552.323 of the Texas Public Information Act. Because we have affirmed the summary judgment in favor of DSHS, we conclude we need not reach this contingent issue. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having overruled Walsh's issues necessary to resolve his appeal, we affirm the trial court's final summary judgment.


/s/    Jerry Zimmerer
        Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain (Spain, J., concurring).